Klassa and another, Appellants, vs. Milwaukee Gas Light Company, Respondent.

Lepianka, Appellant, vs. Same, Respondent.

*May 1—June 5, 1956.*

For the appellants there was a brief by *Alfred Rozran* and *Arlo McKinnon,* both of Milwaukee, and oral argument by *Mr. McKinnon.*

For the respondent there was a brief by *Fairchild, Foley & Sammond, Marvin E. Klitzner,* and *John E. Loomis,* all of Milwaukee, and oral argument by *Mr. Klitzner* and *Mr. Loomis.*

CURRIE, J.    In the case of *Waube v. Warrington* (1935), 216 Wis. 603, 258 N. W. 497, this court held that a person who is out of range of ordinary physical peril, cannot recover for injuries sustained as a result of shock or fright induced by witnessing another's danger, even though such other person has been injured or placed in peril by the negligent act of the defendant.  On this appeal we are faced with the issues of whether the facts of the instant case properly bring it within the rule of the *Waube Case.*

Unfortunately we do not have available a transcript of the testimony due to the fact that the appeal reaches us without any bill of exceptions having been settled.  We are, therefore, limited to gleaning the facts from admissions contained in the pleadings and from those stated in the learned trial judge's memorandum decision.

On April 25, 1951, employees of the defendant Gas Company were admitted to the home occupied by the plaintiffs Mr. and Mrs. Klassa in the city of Milwaukee for the purpose of installing a gas-pressure regulator. While these employees were engaged in such installation activities in the basement of the Klassa home, gas escaped and ignited, causing a fire. The plaintiffs allege that such ignition was accompanied by an explosion but this is denied by the defendant.

At the time of such ignition Mrs. Klassa was in the laundry room in another part of the basement, while her sister, Mrs. Lepianka, was upstairs. Two sons of Mrs. Klassa were also in the basement at the time that the ignition occurred, but the trial judge's memorandum opinion states that neither was "in imminent danger of physical harm."

Mrs. Klassa then went upstairs and outside into the yard. Mrs. Lepianka, who had heard her sister outdoors, also came outside and asked Mrs. Klassa what had happened. One of Mrs. Klassa's sons came up from the basement and assured his mother that he was all right and then went back down into the basement to get his brother and some of his belongings. When this occurred, one of defendant's employees was in the process of attempting to put out the fire. There is no claim made that either Mrs. Klassa or Mrs. Lepianka sustained any injuries as a result of any physical impact from the ignition, but the alleged injuries for which recovery of damages is sought were solely the result of shock and fright.

These are substantially all of the meager facts with which this court has been provided by the record properly before us on this appeal. The defendant took the position during the trial that the shock and fright of Mrs. Klassa and Mrs. Lepianka were caused by their apprehension for the safety of the two Klassa sons who were in the basement at the time the ignition occurred, which shock and fright did not take place at the time of the original ignition but later when both women were out in the yard and discovered that the Klassa

sons were in the basement. On the other hand, the plaintiffs claimed that these two ladies sustained such shock and fright as a result of fear for their own safety while they themselves were inside the house in a position of peril.

Because of these conflicting contentions, the trial court included questions 3 (a) and (b) in the special verdict, which questions inquired as to whether Mrs. Klassa and Mrs. Lepianka were within the field of physical danger through explosion or fire at the time they sustained their shock or fright. The memorandum decision of the trial court cites the *Waube Case* as a justification for including questions 3 (a) and (b) in the special verdict. We, therefore, deem that an analysis of such case, and of the reasoning underlying the same, is essential to the proper determination of the instant appeal.

The plaintiff husband, in the *Waube Case,* sought to recover for the wrongful death of his wife. The complaint alleged that the defendant negligently operated an automobile so as to strike and kill the infant child of Mr. and Mrs. Waube, and that as a result thereof Mrs. Waube became sick and prostrated through fright, shock, and excessive sudden emotional disturbances which caused her death seventeen days later. It was conceded that Mrs. Waube had not been put in peril or fear of physical impact to herself as a result of the defendant's negligence. The trial court overruled a demurrer to the complaint, but this court reversed with directions to sustain the demurrer.

The opinion in the *Waube Case* was written by Mr. Justice WICKHEM, and he pointed out that the problem before the court could not be solved by merely applying the principles of proximate cause, but properly had to be approached from the standpoint of whether the defendant owed any duty to Mrs. Waube, in view of the fact that defendant's actions did not personally endanger her. If the determination of the case were to have been approached solely from the standpoint of

proximate cause, it is apparent that the opposite result would have been reached than was. This is because it is not necessary in order for an act to be negligent that the actor should reasonably have foreseen the particular injury which did result from such act so long as he should have foreseen that harm was likely to be caused to someone by reason thereof; and, once negligence has been established, foreseeability is not an element of proximate cause. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29. The classic statement of this principle is that appearing in the opinion of Mr. Justice MITCHELL in *Christianson v. Chicago, St. P., M. & O. R. Co.* (1896), 67 Minn. 94, 97, 69 N. W. 640, as follows:

"Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

Mr. Justice WICKHEM, in support of the conclusion expressed by him in his opinion in the *Waube Case,* that the defendant owed no duty to Mrs. Waube, cited the decision of Mr. Chief Judge CARDOZO in *Palsgraf v. Long Island R. R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99. For the history of the *Palsgraf Case,* and a keen analysis thereof, see the recent article entitled "Palsgraf Revisited" by Dean William L. Prosser in 52 Michigan Law Review, 1. This court also had further occasion to analyze the *Palsgraf* decision in *Pfeifer v. Standard Gateway Theater, Inc., supra,* at pages 238, 239. A close reading of Mr. Justice WICKHEM's opinion in the *Waube Case* clearly discloses that he recognized

that the conclusion reached was grounded upon judicial policy. This appears from the following statement in the opinion (p. 613):

"The answer must be reached by balancing the social interests involved in order to ascertain how far defendant's duty and plaintiff's right may justly and expediently be extended. It is our conclusion that they can neither justly nor expediently be extended to any recovery for physical injuries sustained by one out of the range of ordinary physical peril as a result of the shock of witnessing another's danger. Such consequences are so unusual and extraordinary, viewed after the event, that a user of the highway may be said not to subject others to an unreasonable risk of them by the careless management of his vehicle. Furthermore, *the liability imposed by such a doctrine is wholly out of proportion to the culpability of the negligent tort-feasor, would put an unreasonable burden upon users of the highway, open the way to fraudulent claims, and enter a field that has no sensible or just stopping point.*" (Emphasis supplied.)

Whenever a court holds that a certain act does not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination. For an excellent demonstration of the truth of this, we quote from the afore-mentioned article by Dean Prosser in 52 Michigan Law Review, 1, 14, 15, as follows:

"For more than two generations it has been repeated that there can be no duty toward an unborn child; now all of a sudden the cases on prenatal injury are going the other way. It used to be held that one who gets himself into danger owes no duty to a rescuer injured in saving him; now all at once the duty is there. It was once well-settled law that one who negligently made misrepresentations could owe no possible duty to a third person into whose hands they might come; there is now respectable authority that in some situations such a duty can be found. It was once the law that a landlord leasing a small shop for the admission of the public owed no

duty to those who entered; all of the recent cases agree that the duty is clear.

"These are shifting sands, and no fit foundation. *There is a duty if the court says there is a duty; the law, like the constitution, is what we make it. Duty is only a word with which· we state our conclusion that there is or is not to be liability; it necessarily begs the essential question.* When we find a duty, breach, and damage, everything has been said. The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none: In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, 'always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.' " (Emphasis supplied.)

The holding of the *Waube Case,* and the reasons advanced in the opinion in such case in support of the conclusion reached, were approved in an article written by CALVERT MAGRUDER, now chief judge of the United States court of appeals for the First circuit, in 49 Harvard Law Review, 1033, entitled "Mental and Emotional Disturbance in the Law of Torts." Cases decided in other jurisdictions which are in accord with the *Waube Case* are: *Blanchard v. Reliable Transfer Co.* (1944), 71 Ga. App. 843, 32 S. E. (2d) 420; *Resavage v. Davies* (1952), 199 Md. 479, 86 Atl. (2d) 879; and *Cote v. Litawa* (1950), 96 N. H. 174, 71 Atl. (2d') 792. For a discriminating review of the authorities, both English and American, on the subject of recovery for physical injuries produced by fear or shock, see the article by Hubert Winston Smith, entitled "Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli," 30 Virginia Law Review, 193.

We deem that the decision in the *Waube Case* is grounded on sound considerations of public policy and should be adhered to. Therefore, it was proper for the trial court in the instant case to have submitted questions 3 (a) and (b) in the special verdict unless the fact, that Mrs. Klassa and Mrs. Lepianka were in the house at the time the original ignition occurred, is sufficient to distinguish the instant case from the *Waube Case* to the extent of rendering inapplicable the rule of the latter.

Counsel for the plaintiffs contend that, by reason of Mrs. Klassa and Mrs. Lepianka being inside the house when the ignition of gas occurred, they were both within the field of potential peril to themselves as a matter of law, and that such fact coupled with the found negligence on the part of the defendant establishes liability in favor of the plaintiffs. However, as previously adverted to, the defendant maintains that there was some evidence that these two ladies did not sustain their shock or fright at the time of the original ignition but later when both were outside in the yard beyond the field of peril to themselves, and that such shock or fright was not the result of any fear for their own safety but only for that of the two sons of Mrs. Klassa. In the absence of a bill of exceptions, we cannot assume that there was no such evidence adduced. Such evidence, even though contradicted by that of the plaintiffs, would render appropriate the submission of questions 3 (a) and (b) in the verdict under the principle of the *Waube Case*. The stated reasons of policy underlying such principle would seem to require such result if these two lady plaintiffs were both without the field of peril to themselves when they first incurred their shock or fright, which was solely the result of fear for the safety of the two Klassa sons and not for their own safety.

Plaintiffs' counsel also maintain that the following instructions, which were given by the trial court to the jury with

respect to questions 3 (a) and (b) of the verdict, were prejudicially erroneous:

"Ladies and gentlemen of the jury, you are further instructed in answering questions 3 (a) and 3 (b) that if the plaintiffs Josephine Klassa and Anna Lepianka, or either of them, received shock or fright which resulted in any personal injury, if such said shock or fright was solely occasioned by the realization that the sons of Josephine Klassa and the nephews of Anna Lepianka were still in the basement of the house, then you must answer question 3 (a) or 3 (b), or both, as the case may be, 'No.' Even if such shock or fright, if any, was not so occasioned, you are instructed that if such shock or fright, if any, occurred, it is for you to determine whether the plaintiffs Josephine Klassa and Anna Lepianka, or either of them, were outside the range of ordinary physical peril from the explosion or fire at the time of the occurrence. If they, or either of them, were outside this range, you must answer question 3 (a) or 3 (b), or both, as the case may be, 'No.' If they, or either of them, were within this range, you must answer question 3 (a) or 3 (b), or both, as the case may be, 'Yes.' "

The first sentence of the above-quoted instructions raises a new question not heretofore discussed in this opinion. Under such instructions the jury were required to answer "No" to questions 3 (a) and (b) of the verdict even though the plaintiffs may have been in the field of peril to themselves, by being inside the house at the time the ignition occurred, if they underwent no shock or fright for their own safety but only for the safety of the two Klassa sons. Counsel for the plaintiffs contend that the rule of the *Waube Case* is inapplicable to a fact situation where the person affrighted by the negligent act of another should not himself have been in the range of danger. The wording of syllabus 3 of the *Waube Case* tends to lend support to such argument because the rule of the case is there stated as follows : *"A person out of range of ordinary physical peril* cannot recover for physical injuries sustained as a result of the shock of witnessing an-

other's danger." (Emphasis supplied.) However, at page 608 of the opinion in the *Waube Case,* it is stated:

"In jurisdictions following the liberal rule it has been held consistently, with but two exceptions, hereafter to be noted, that in order to give rise to a right of action grounded on negligent conduct, *the emotional distress or shock must be occasioned by fear of personal injury to the person sustaining the shock, and not fear of injury to his property or to the person of another.* [Citing cases.]" (Emphasis supplied.)

One of the policy reasons advanced by Mr. Justice WICK-HEM for holding nonliability in the *Waube Case* was that the opposite result would have been "wholly out of proportion to the culpability of the negligent tort-feasor." Such reason would fall by the wayside if the person sustaining the shock were himself in the range of danger. However, even though the person sustaining the shock were within the field of potential danger, if the shock was solely the result of fear for another's safety, the following stated policy reasons in the *Waube Case* opinion for holding nonliability would be applicable, *i. e.,* that the imposition of liability would *"open the way to fraudulent claims, and enter a field that has no sensible or just stopping point."* The question raised is a close one but we consider it to be the better policy to deny recovery in all cases where the physical injuries are *solely* caused by shock or fright resulting from fear for another's safety where there was no physical impact to the person for whose injuries recovery of damages is sought.

Under the trial court's instructions, if the jury should determine that Mrs. Klassa and Mrs. Lepianka were within the range of danger when affrighted and their shock was caused by fear for their own safety as well as that of the Klassa sons, then such shock would not have been *"solely occasioned"* by realization of the danger to the Klassa sons, and a "Yes" answer to questions 3 (a) and (b) would be required.

We conclude that, on the basis of the state of the record before us, there was no error in the above-quoted instructions to the jury. Inasmuch as the meager facts before us did not require that questions 3 (a) and (b) of the verdict be answered "Yes" as a matter of law, the answers "No" thereto preclude the recovery of any damages for personal injuries to Mrs. Klassa and Mrs. Lepianka. Therefore, the verdict supports the judgments appealed from.

Counsel for the plaintiffs further contend that the trial court also committed error in its instructions on the issue of damages. However, the determination already reached by us on the merits renders such question moot, and there is no necessity for us to pass thereon.

The defendant has moved to strike certain matter from the record, which was returned to this court by the clerk of circuit court, on the ground that the same properly could only be made a part of such record by incorporation in a bill of exceptions. The principal item sought to be struck is the trial court's instructions to the jury. We hold that the charge to the jury properly constitutes part of the record without the necessity of being incorporated in a bill of exceptions. This is because sec. 270.22, Stats., provides as follows:

"As soon as any charge has been given to the jury it shall be placed and remain on file among the papers of the case. When delivered orally the reporter shall immediately transcribe the same in longhand and file it, without special compensation therefor."

The defendant, in support of its motion to strike the charge, relies upon an *obiter dictum* in *Dornbrook v. M. Rumely Co.* (1903), 120 Wis. 36, 97 N. W. 493, which stated that this court could not pass on alleged error in the instructions because the charge did not appear in the bill of exceptions. No reference was made in the opinion in the *Dornbrook Case* to sec. 2854, Stats. (predecessor to sec. 270.22), and the statement in the opinion on which defendant

relies was entirely unnecessary to the result because of the conclusion reached that a verdict should have been directed. In the recent case of *Garcia v. Chicago & N. W. R. Co.* (1950), 256 Wis. 633, 42 N. W. (2d) 288, this court did pass on a question of alleged error in the instructions in an appeal where there was no bill of exceptions before us.

Defendant's motion to strike is, therefore, denied.

*By the Court.*—Judgments affirmed.