MEIHOST (Elsie E.), Plaintiff and Appellant, v. MEIHOST (William F.), Defendant: MACKAI and another, Defendants and Respondents.*

MEIHOST (William F.), Plaintiff and Appellant, v. MACKAI and another, Defendants and Respondents.*

*December 1, 1965—January 12, 1966.*

---

* Motion for rehearing denied, with costs, on March 1, 1966.

For the appellants there was a brief by *Kersten & McKinnon* of Milwaukee, for Elsie E. Meihost, and *Wolf, Haese, Emmert & Wilking* of Milwaukee, for William F. Meihost, and oral argument by *George P. Kersten* and *William J. Haese.*

540

For the respondents there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

WILKIE, J. Appellants predicate their action for damages solely on the ground that respondent violated Milwaukee ordinance 101–112. However, because the question of liability stemming from leaving keys in an unattended auto should be completely resolved, the complaint should be interpreted as also raising the companion issue of whether respondent is liable on a common-law negligence theory irrespective of the breach of any ordinance.[2] Accordingly, the first two issues presented on this appeal, both of which are ones of first impression in this state, are:

(1) Was the respondent, because of a violation of the Milwaukee ordinance, negligent for leaving a key in his car?

(2) Was the respondent, irrespective of the ordinance, guilty of common-law negligence?

*Liability Under the Ordinance.*

Appellants contend that respondent's failure to remove the ignition key from the car in violation of the ordinance constituted causal negligence as a matter of law, or at least presented a jury question on negligence and cause. Generally, where a statute is designed to protect a class of persons from a particular type of harm, a violation of the statute which results in that type of harm to someone in the protected class constitutes negligence *per se.*[3]

[2] As was done in *Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. (2d) 344, 117 N. W. (2d) 347.

[3] Prosser, Law of Torts (hornbook series, 3d ed.), p. 191, sec. 35.

Thus, if Milwaukee ordinance 101–112 was a safety measure adopted to protect the public against the negligent driving of automobile thieves, the breach of the ordinance will amount to negligence *per se* in this instance.[4]

A number of states have considered whether an enactment like Milwaukee's was a safety measure. In *Ney v. Yellow Cab Co.*[5] the Illinois statute not only required that the key be removed from the ignition, but also prohibited stopping on grades "without effectively setting the brake . . . and turning the front wheels to the curb or side of the highway" and set fifteen as the minimum driving age. In finding this provision a safety statute, the court reasoned that the brake and wheel requirements are hardly theft deterrents and that the driving-age proviso was to prevent the public from being exposed to inexperienced and immature drivers. Because of the differences in the statutory language, *Ney* is distinguishable.

The same is true of *Justus v. Wood* [6] wherein a Tennessee statute required the turning of the front wheels toward the curb and the setting of the brakes as well as locking the ignition. In *Ross v. Hartman* [7] a District of Columbia ordinance provided that:

". . . no person shall allow any motor vehicle operated by him to stand or remain unattended on any street or in

[4] *Farmers Mut. Automobile Ins. Co. v. Gast, supra,* footnote 2, at page 348. This case recognized exceptions in the rule which are not relevant here. *Bentson v. Brown* (1925), 186 Wis. 629, 203 N. W. 380, where driver was found to have violated specific statutes imposing rules of the road. *Sharon v. Winnebago Furniture Mfg. Co.* (1910), 141 Wis. 185, 124 N. W. 299. Employment of a boy under sixteen years of age to operate a saw was held to be a violation of statute and negligence as a matter of law.

[5] (1954), 2 Ill. (2d) 74, 76, 117 N. E. (2d) 74, 76.

[6] (1961), 209 Tenn. 55, 348 S. W. (2d) 332.

[7] (D. C. Cir. 1943), 139 Fed. (2d) 14, certiorari denied, 321 U. S. 790, 64 Sup. Ct. 790, 88 L. Ed. 1080.

any public place without first having locked the lever, throttle, or switch by which said motor vehicle may be set in motion." [8]

The court held that it was designed to promote safety in the streets and not to prevent thefts.

In *Maggiore v. Laundry & Dry Cleaning Service* [9] a New Orleans ordinance requiring the key to be removed to prevent the vehicle from being set in motion was considered. It was held that the ordinance served a purpose consistent with the protection of the public.

However, courts in Minnesota, in *Anderson v. Theisen*,[10] and in Massachusetts, in *Sullivan v. Griffin*,[11] have assumed that similar enactments were anti-theft measures.

Still a third view is that this type of ordinance is primarily a theft deterrent, but is also a safety device.[12] Thus:

"While the purpose of the ordinance is primarily for the protection of car owners themselves and as an aid in proper law enforcement against theft and pilferage, however, to a limited extent, it is also a safety measure intended to protect the users of the public streets and highways at large, of whom appellant was one." [13]

It can be seen that there is no prevalent view among the other jurisdictions as to the purpose of similarly worded statutes or ordinances. What then is the purpose of the Milwaukee ordinance?

There are two principal reasons why the Milwaukee ordinance should be deemed an anti-theft rather than a safety measure. First, it was enacted by the city of Milwaukee pursuant to the provisions of sec. 66.95, Stats.,

[8] *Ross v. Hartman, supra,* footnote 7, at page 14.

[9] (La. App. 1933), 150 So. 394.

[10] (1950), 231 Minn. 369, 43 N. W. (2d) 272.

[11] (1945), 318 Mass. 359, 61 N. E. (2d) 330.

[12] *Hersh v. Miller* (1959), 169 Neb. 517, 99 N. W. (2d) 878.

[13] Id. at page 520.

which authorizes the enactment of local ordinances. That enabling statute provides:

"PROHIBITING OPERATORS FROM LEAVING KEYS IN PARKED MOTOR VEHICLES. The governing body of any city may by ordinance require every passenger motor vehicle to be equipped with a lock suitable to lock either the starting lever, throttle, steering apparatus, gear shift lever or ignition system; prohibit any person from permitting a motor vehicle in his custody from standing or remaining unattended on any street, alley or in any other public place, except an attended parking area, unless either the starting lever, throttle, steering apparatus, gear shift or ignition of said vehicle is locked and the key for such lock is removed from the vehicle; and provide forfeitures for such violations."

The legislative history of sec. 66.95, Stats., indicates that it was designed as a crime deterrent—particularly juvenile theft—and not to safeguard third persons from the conduct of thieves. Sec. 66.95 was adopted in 1953.[14] A letter dated January 26, 1953, sent by then Milwaukee Police Chief John W. Polcyn to Senator Bernhard Gettelman, which can be found in the legislative reference library bill file,[15] begins "Knowing of your sincere interest in crime prevention and in law enforcement agencies" and continues:

"Should this Bill become a law it will serve several purposes. 1. It would add greatly toward the prevention of

[14] Ch. 529, Laws of 1953.

[15] Although none of the parties contends that the letter cannot be properly considered (appellants and respondents each actually rely on it to sustain their respective positions) it is nonetheless clear that this court can utilize correspondence from nonlegislators in ascertaining legislative intent. *E. g., State ex rel. Reynolds v. Circuit Court* (1961), 15 Wis. (2d) 311, 112 N. W. (2d) 686, 113 N. W. (2d) 537 (memo from Milwaukee county corporation counsel); *Milwaukee v. Public Service Comm.* (1960), 11 Wis. (2d) 111, 104 N. W. (2d) 167 (instructions from counsel of large public utility). See Liddle, Comment, Statutory Construction—Legislative Intent—Use of Extrinsic Aids in Wisconsin, 1964 Wisconsin Law Review, 660.

automobile thefts thereby saving the owners a great deal of expense and inconvenience and assuring them of finding their automobiles where they parked them. 2. It would take away the temptation from teen-agers to take these automobiles for joy rides thereby preventing serious accidents and in many cases loss of life. 3. It would save the heartaches of hundreds of fathers and mothers whose sons were arrested for automobile larceny thereby bringing disgrace upon the family. I am sincere when I say that this sort of legislation is very badly needed and would be of great benefit to the State in crime prevention."

Polcyn notes certain opposition to the bill in the rural communities, and attributes this to a misunderstanding inasmuch as only cities would be affected. He suggests an amendment removing farm tractors from coverage and explains that violators would be issued "regulation parking violation summons" and fined accordingly. Polcyn concludes:

"It is further my opinion that this Bill would act as an educational program to impress upon the automobile owners their responsibilities in protecting their own property."

Although appellants place much weight on the "preventing serious accidents and in many cases loss of life" language, it is apparent from a reading of the letter as a whole that an anti-theft rather than a safety measure was contemplated. Polcyn was primarily concerned with "crime prevention," the elimination of "automobile thefts," sparing parents the grief of having sons "arrested for automobile larceny," and impressing upon car owners "their responsibilities in protecting their own property." In addition, since the threat posed to the public by a tractor thief is inconsequential, the proposal to exclude them from the purview of the statute indicates that the legislation was aimed at preventing thefts rather than protecting third persons.

Second, sec. 66.95, Stats., is "enabling legislation" and merely authorizes the city governing body to levy forfeitures for violations of ordinances enacted pursuant to it and fails to even mention civil actions. Interpreting the statute (and therefore the ordinance) as a public-safety measure would in effect change the general common-law rule that a car owner is not liable for damages caused by a thief,[16] and this should not be done in the absence of a clear and unambiguous legislative fiat.[17]

Thus, we conclude that the Milwaukee ordinance 101–112 is anti-theft legislation and that, therefore, respondent was not negligent for breaching it. We recognize that this result is contrary to *Ross v. Hartman, supra,* but we simply disagree with that case which, as Prosser says, has gone "to an extreme."[18]

### Common-Law Negligence.

In Wisconsin "harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence."[19] Accordingly, respondent was

---

[16] *E. g., Bennett v. Arctic Insulation* (9th Cir. 1958), 253 Fed. (2d) 652; *Richards v. Stanley* (1954), 43 Cal. (2d) 60, 271 Pac. (2d) 23 (involving a statute which by express terms was not to have a bearing on a civil suit); *Curtis v. Jacobson* (1947), 142 Me. 351, 54 Atl. (2d) 520; *Reti v. Vaniska, Inc.* (1951), 14 N. J. Super. 94, 81 Atl. (2d) 377; *Lotito v. Kyriacus* (1947), 272 App. Div. 635, 74 N. Y. Supp. (2d) 599.

[17] *Estate of Phalen* (1928), 197 Wis. 336, 222 N. W. 218.

[18] Prosser, Law of Torts (hornbook series, 3d ed.), p. 198, sec. 35.

[19] *Szep v. Robinson* (1963), 20 Wis. (2d) 284, 291, 121 N. W. (2d) 753. See also *Radloff v. National Food Stores, Inc.* (1963), 20 Wis. (2d) 224, 121 N. W. (2d) 865, 123 N. W. (2d) 570; *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 117 N. W. (2d) 597; *Mondl v. F. W. Woolworth Co.* (1961), 12 Wis. (2d) 571, 107 N. W. (2d) 472.

guilty of common-law negligence if harm, not necessarily the particular harm that actually occurred,[20] could have been reasonably foreseen as probable by a person of ordinary prudence under like circumstances. The mere possibility of harm is insufficient to establish negligence.[21] According to his affidavit, respondent had parked his car in a residential area and removed the key from the ignition, although there was a key secreted in a band-aid box in the glove compartment. There were no allegations in the complaints that the neighborhood was such that he should have been alerted to the danger of theft. Under the particular circumstances of the instant case, respondent could not reasonably anticipate the theft that occurred and he could not reasonably foresee that harm would result to the plaintiffs. Therefore, he is not negligent.

Assuming that the key had been left in the ignition it may be that such conduct would be negligence on the part of the owner but, even so, public-policy considerations direct that, under most circumstances, the owner not be held liable for such harm as would result by reason of the injury of persons in a collision caused by the negligent driving of the thief of the car.[22] Under most circumstances, allowance of recovery would place too unreasonable a burden upon the owners (or others having legal custody) of motor vehicles. In this respect, we agree with the conclusion reached by the supreme court of California in *Richards v. Stanley,*[23] in which it held, under facts essentially similar to those here assumed, that it would be incongruous to hold the car owner responsible

[20] *Klassa v. Milwaukee Gas Light Co.* (1956), 273 Wis. 176, 182, 77 N. W. (2d) 397; *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29.

[21] *Wisconsin Power & Light Co. v. Columbia County, supra,* footnote 19.

[22] *Schilling v. Stockel* (1965), 26 Wis. (2d) 525, 532, 133 N. W. (2d) 335.

[23] *Supra,* footnote 16.

for the negligence of the driver where the car was taken without permission while ordinarily exonerating him for similar acts where he has actually loaned his vehicle to the one driving.[24]

*By the Court.*—Judgments affirmed.

CURRIE, C. J. (*concurring*). I concur in the opinion of the court, except that I have some reservation with respect to the last paragraph thereof.

The learned trial court grounded its decision, in holding no liability on the part of Mackai existed, on intervening cause. Intervening cause, however, does not relieve the first actor from liability for his act of negligence if such act is a substantial factor in causing the accident unless it is held to be a superseding cause.[1] In order for an intervening cause to be a superseding cause, the court must invoke a policy determination that the accident causing harm was so beyond the reasonable expectation of the first actor, as to make it unconscionable to impose liability.[2] The guidelines to be applied by the court in determining that the intervening cause was a superseding cause are those set forth in Restatement, 2 Torts, p. 1196, sec. 447.[3] This section of the Restatement, provides:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

[24] See *Canzoneri v. Heckert* (1936), 223 Wis. 25, 269 N. W. 716; *Crossett v. Goelzer* (1922), 177 Wis. 455, 188 N. W. 627.

[1] *Strahlendorf v. Walgren Co.* (1962), 16 Wis. (2d) 421, 114 N. W. (2d) 823.

[2] *Strahlendorf v. Walgren Co., supra; Ryan v. Cameron* (1955), 270 Wis. 325, 71 N. W. (2d) 408. Cf. *Schilling v. Stockel* (1965), 26 Wis. (2d) 525, 133 N. W. (2d) 335.

[3] *Ryan v. Cameron, supra; Dombrowski v. Albrent Freight & Storage Corp.* (1953), 264 Wis. 440, 59 N. W. (2d) 465.

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

It would be difficult to contend that a car owner who leaves the key in the ignition lock of a car parked on a public street is not negligent. However, between this act on the part of the car owner and the accident, which results from a thief stealing the car and negligently operating it so as to cause an accident, two intervening causes must have occurred. The first is the thief's act in stealing the car, and the second is his negligent operation of it resulting in the accident. Under the quoted guidelines of the Restatement, the first of these two intervening causes ought not be held to be a superseding cause because the car owner should have realized that, by leaving the key in the ignition lock, some person might steal the car.[4] The second intervening cause, *i. e.*, the thief's negligent operation of the stolen vehicle, presents a much closer question. It could well be argued that such negligent operation is such an act that a reasonable person in the owner's position would not regard it as highly extraordinary.[5]

---

[4] Par. (a), Restatement, 2 Torts, p. 1196, sec. 447.

[5] Par. (b), Restatement, 2 Torts, p. 1196, sec. 447.