**John S. GARFIELD and Betty M. Garfield, and John W. Wiseman and Audrey Wiseman, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 67–C–144.**

United States District Court
W. D. Wisconsin.

Feb. 18, 1969.

894

Kenneth H. Conway, Jr., Baraboo, Wis., for plaintiffs.

Edmund A. Nix, U. S. Atty., John E. Clarke, Asst. U. S. Atty., Madison, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an action, instituted under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., for damages for personal injuries. Plaintiffs seek to rest liability on the alleged negligence of defendant.

■ The incident from which this action arose occurred within the State of Wisconsin and, therefore, under 28 U.S. C. § 1346(b), the law of the State of Wisconsin governs this action. The government has filed a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, on the ground that it is not liable for negligence under the facts as alleged in the complaint. Specifically, the government relies on § 29.68, Wis.Stats., entitled "Liability of Landowners".

The incident from which this action arose may fairly be described as bizarre. The complaint alleges that on October 24, 1965, plaintiffs and approximately fourteen other persons (hereinafter plaintiffs' group) entered upon the Camp McCoy Military Reservation, located in Monroe County, Wisconsin, at the invitation of defendant, for the purpose of squirrel hunting, picnicking, and hiking in a part of the reservation referred to as a public area; that prior to said date plaintiffs John S. Garfield and John W. Wiseman had each purchased a small game hunting permit issued by the Camp McCoy Fish and Wildlife Council authorizing them to hunt small game on the reservation; that plaintiffs Betty M. Garfield and Audrey Wiseman did not engage in small game hunting, but entered upon the reservation solely for the purpose of picnicking and hiking; that during the time that plaintiffs were on the reservation, one of the members of plaintiffs' group discovered a blank 90 millimeter cartridge in said public area; that said cartridge was transported a few hundred yards to an area in which members of plaintiffs' group had parked their automobiles and in which plaintiffs' group was planning to prepare a picnic lunch; that said cartridge was placed in a tree approximately 150 feet from this picnic area; that certain members of plaintiffs' group began shooting at said cartridge with a .22 caliber rifle from the vicinity of the picnic area; that while plaintiffs were engaged in preparing the picnic lunch a violent explosion occurred; that said cartridge was thereby propelled in a reverse direction toward the group preparing the picnic lunch; and that said cartridge struck plaintiffs John S. Garfield, John W. Wiseman and Audrey Wiseman and narrowly missed plaintiff Betty M. Garfield.

Plaintiff Betty M. Garfield sues for damages for physical injuries resulting from mental distress suffered as a result of this incident. Plaintiff John S. Garfield sues for damages for personal injuries suffered as a result of this incident and for medical expenses incurred by him for treatment of Betty M. Garfield and for the loss of the services, society and consortium of Betty M. Garfield. Plaintiff Audrey Wiseman sues for damages for personal injuries. Plaintiff John W. Wiseman sues for medical expenses incurred by him for treatment of Audrey Wiseman and for the loss of the services, society and consortium of Audrey Wiseman.[1]

---

1. Plaintiff John Wiseman makes no claim for any injury to himself.

The government contends that it is not liable for any injuries which plaintiffs may have sustained on account of the alleged negligence of the government. For this contention the government relies on § 29.68, Wis.Stats., which provides:

"(1) Safe for entry: no warning. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, berry picking, water sports, sightseeing or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on such premises to persons entering for such purpose, except as provided in sub. (3).

"(2) Permission. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur any liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).

" * * *

"(3) This section does not limit the liability which would otherwise exist for wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses was granted for a valuable consideration other than the valuable consideration, if any, paid to said landowner by the state; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger. As used in this subsection 'valuable consideration' shall not include contributions to the sound management and husbandry of natural and agricultural resources of the state resulting directly from the recreational activity.

"(4) Injury to person or property. Nothing in this section creates a duty of care for injury to person or property.

"(5) Definition. The word 'premises' as used in this section includes lands, private ways and any buildings, structures and improvements thereon."

■ This statute modifies the relationship which existed between a landowner and those who entered upon his property under the common law invitee-licensee-trespasser classification of entrants to property. Under the statute the landowner owes a duty of reasonable care to those entering his land for recreational purposes only if permission to enter the land is granted for a "valuable consideration". See Note, Torts-Statutes-Liability of Landowner to Persons Entering for Recreational Purposes, 1964 Wis.L.Rev. 705, 706.

Plaintiffs contend that the liability of defendant was not so limited in this case and that defendant did owe plaintiffs a duty of reasonable care because plaintiffs were granted permission to enter upon the land for a "valuable consideration" within the meaning of § 29.68(3). The "valuable consideration" to which plaintiffs refer is the fee paid by John S. Garfield and John W. Wiseman for small game hunting permits.[2]

2. Plaintiffs do not contend that the killing of small game constitutes "valuable consideration" within the meaning of § 29.68 (3). The questions whether the killing of small game benefits the government in some way and whether, if it does constitute such a benefit, it nevertheless constitutes a "contribution to the sound

Attached to the defendant's motion for summary judgment is a copy of the Cooperative Plan entered into by the Department of Defense, the Department of Interior, and the State of Wisconsin for conservation and development of fish and wildlife resources on the Camp McCoy Military Reservation. From this plan it appears that the fee for a small game hunting permit is 50 cents. The government does not dispute the payment of such a fee by John S. Garfield and John W. Wiseman, but contends that such fees are excluded from the term "valuable consideration" by the final sentence of § 29.68(3) because the fees are used for "sound management and husbandry of natural and agricultural resources of the state". The government finds support for this contention in the text of the Cooperative Plan which states in reference to the various permit fees:

"Such collections will be utilized on the reservation for the protection, conservation and management of fish and wildlife, including habitat improvement and related activities, *and for no other purpose*, in accordance with Section 3 of Public Law 86–797 [74 Stat. 1052]." (Emphasis in original.)

■ The last sentence of § 29.68(3) which provides the limitation on the meaning of "valuable consideration" upon which the government relies was added by Chapter 190 of the Laws of 1965. Chapter 190 of the Laws of 1965

does not provide when it is to become effective. § 990.05, Wis.Stats., provides that a law which does not expressly provide for the time when it is to take effect becomes effective on the day after its publication. It appears that Chapter 190 of the Laws of 1965 was published on August 11, 1965. Since the incident from which this action arose occurred on October 24, 1965, the last sentence of subsection (3) was in effect at that time and is applicable here.

§ 29.68 does not appear to have been construed by the courts of the State of Wisconsin in any reported decision. Additionally, although several states have enacted similar provisions [3], there appear to be no reported decisions construing any of these statutes.

■ The government contends that permit fees are excluded from the term "valuable consideration" within the meaning of § 29.68(3) because said fees are utilized for "protection, conservation and management of fish and wildlife."

According to the Cooperative Plan, the fees collected are to be utilized for the sole purpose of "protection, conservation and management of fish and wildlife" on the reservation. The Plan provides for the establishment of a program of research and development with the following objectives:

"a. To develop and improve the habitats for desirable wildlife and to

management and husbandry of natural and agricultural resources of the state" within the meaning of § 29.68(3), are, therefore, not presented here.

3. See, e. g., Ala.Code Tit. 47 §§ 281–285 (Supp.1967); Ark.Stat.Ann. §§ 50–1101 to 50–1107 (Supp.1967); Cal.Civil Code § 846 (Deering Supp.1969); Idaho Code § 36–2503 (Supp.1967); Ill.Stat.Ann. ch. 70, §§ 31–37 (Smith Hurd Supp.1969); Ky.Rev.Stat. § 150.645 (Supp.1968); Me.Rev.Stat.Ch. 37 § 152 (Supp.1963); C.L.Mich.1948, § 300.201 [P.A.1964, No. 199] Mich.Stat.Ann. § 13.1485 (1967); Minn.Stat.Ann. § 87.04 (1964); Mont. Rev.Code §§ 67–808, 67–809 (Supp.1967); Nev.Rev.Stat. § 41.510 (1967); N.H. Rev.Stat.Ann. § 212.34 (1964); N.J. Stat.Ann. §§ 2A:42A–2 to 2A:42A–5

(Supp.1968); N.Mex.Stat.Ann. § 53–4–5.1 (Supp.1967); N.Y. General Obligations Law McKinney's Consol. Laws, c. 24–A, § 9–103 (Supp.1968); N.C. Gen.Stat. §§ 113–120.5 to 113–120.7 (1966); N.D.Cent.Code §§ 53–08–01 to 53–08–06 (Supp.1967); Ohio Rev.Code Ann. § 1533.181 (Page 1964); Okla. Stat.Ann.Tit. 76 §§ 10–15 (Supp.1968); Ore.Rev.Stat. § 30.790 (1965); Pa.Stat. Ann.Tit. 68 §§ 477–1 to 477–8 (Purdon Supp.1967); Tenn.Code Ann. §§ 51–801 to 51–805 (1966); Vernon's Ann.Tex. Civil Stat. Art. 1b (1969); Utah Code Ann. §§ 23–1–13, 23–1–14 (Supp.1967); Vt.Stat.Ann.Tit. 10 § 5211a (Supp. 1968); Va.Code Ann. § 8–654.2 (Supp. 1968).

control those undesirable species which are objectionable to good conservation practice and installation objectives.

"b. To develop and improve the habitats for fish in the lakes and streams and to control those species which are undesirable to these waters.

"c. To provide for the harvest of fish and wildlife within the scope of sound conservation practices * * *."

Such plans are authorized by Public Law 86–797, 74 Stat. 1052, 16 U.S.C. § 670a et seq., which is entitled, "An Act to promote effectual planning, development, maintenance, and coordination of wildlife, fish, and game conservation and rehabilitation in military reservations." The Senate Report of the bill which was enacted as Public Law 86–797 indicates that it was expected that the cost of the program authorized on each military reservation would be borne by the sportsmen beneficiaries through the sale of hunting and fishing permits. S.Rep. No. 1492, 86th Cong. 2d Sess., 1960 United States Code Congressional and Administrative News, Vol. 2, pp. 3833, 3834. The act was amended in 1968 by Public Law 90–465, 82 Stat. 661, to authorize an appropriation of $500,000 per fiscal year for the fiscal years beginning July 1, 1969, July 1, 1970, and July 1, 1971. The reason for the authorization was that the proceeds from the sale of hunting and fishing permits was inadequate to meet the needs of the programs on various reservations.[4]

I conclude that the permit fees are utilized to support a program for "protection, conservation and management of fish and wildlife" and that the activities carried out under the program do constitute "contributions to the sound management and husbandry of natural and agricultural resources of the state", within the meaning of subsection (3).

A more difficult question is whether the activities carried out under the program set forth in the Cooperative Plan constitute contributions "resulting directly from the recreational activity" within the meaning of § 29.68(3).

■ It may be that such a construction would effectuate two of the broader purposes of § 29.68: (1) making lands available to the public for recreational use; and (2) the protection, conservation, and management of fish and wildlife. Both of these broad objectives of § 29.68 would be served if the final sentence of subsection (3) were construed to exclude from "valuable consideration" fees from recreational users which are utilized to support a program to protect, conserve, and manage the natural resources enjoyed by the users.

Several considerations militate against such a construction, however.

■ The construction renders superfluous the use of the word "directly". It is a cardinal rule of statutory construction that "statutes should be so construed that no word or clause shall be rendered surplusage." Cook v. Industrial Commission, 31 Wis.2d 232, 240, 142 N.W.2d 827 (1966); Wilmot Union High School District v. Rothwell, 27 Wis.2d 228, 235, 133 N.W.2d 782 (1965). On its face, the use of the word "directly" appears to limit the meaning of the final sentence of subsection (3) to a "contribution" produced by the recreational activity itself.

The next consideration militating against the construction for which the government contends is the legislative history of the final sentence of subsection (3), as distinguished from that of the balance of § 29.68.

The legislative history of § 29.68, as originally enacted in 1963, is summarized in Note, Torts-Statutes-Liability of Landowner to Persons Entering for Recreational Purposes, *supra* at 709. It appears from that summary that the impetus for the statute was provided by a group of industrial forest owners. These forest owners had suffered substantial

---

4. The Camp McCoy Military Reservation was not listed as one of the reservations urgently in need of funds, however. S. Rep.No. 1458, 90th Cong., 2d Sess., 1968 United States Code Congressional and Administrative News, pp. 3152, 3154.

damage to forest reproduction as a result of large deer herds. In the late 1950's they initiated a campaign to promote deer hunting on their forest lands. The forest owners became concerned, however, about potential liability for injuries suffered by those whom they had invited upon their lands. They sought a statutory limitation of liability and § 29.68 was the result of their efforts.

As originally enacted, § 29.68(3) did not include the final sentence. That sentence was added by Chapter 190 of the Laws of 1965. It appears, however, to have originated with the Wisconsin Law Review Note cited above. The Note discusses, among other things, the construction to be given "valuable consideration" in § 29.68(3). Note, Torts-Statutes-Liability of Landowner to Persons Entering for Recreational Purposes, *supra* at 707–711. The Note concludes that the term is ambiguous; that it might be construed to include the economic benefit accruing to forest owners from elimination of excessive deer herds; and that a refinement of the term is necessary to assure the protection which the forest owners had sought. The refinement suggested is the language of the final sentence of subsection (3). *Id.* at 710–711.

The Note suggests that such language provides a more justifiable definition of "valuable consideration" than would a monetary definition of that term. A monetary definition, it is noted, would withhold the protection of the statute from a landowner who collects a nominal fee from the public, but grant the protection of the statute to a landowner who benefits substantially, but indirectly, from allowing free recreational use of his land by a prospective purchaser of his land or by a prospective customer of the landowner's business establishment. The language suggested by the Note and adopted by Chapter 190 of the Laws of 1965 would withhold the statutory protection both from those who receive the nominal fee and from those who receive benefits by promoting the sale of the land or the sale of the landowner's products or services. But it would grant the stat-utory protection to those who receive indirect benefits, perhaps substantial, in the form of reduction of forest and crop damage. Such a distinction is justifiable, the Note suggests, because of the public interest in the well-being of the forest industry. *Id.* at 710.

The bill drafting file for Chapter 190 of the Laws of 1965 indicates that the language of the amendment was intended to be taken directly from the language proposed in the Wisconsin Law Review Note.

To attempt to draw conclusions as to legislative intent from legislative history such as that of § 29.68 is a precarious and perhaps unwise exercise. See concurring opinions of Jackson, J., in United States v. Public Utilities Commission of California, 345 U.S. 295, 319, 73 S.Ct. 706, 97 L.Ed. 1020 (1953), and Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035 (1951); Comment, Statutory Construction—Legislative Intent—Use of Extrinsic Aids in Wisconsin, 1964 Wis. L.Rev. 660. To the extent that this legislative history is helpful and reliable, however, it appears to resist the construction for which the government contends. That is, it appears to support the view that the "contributions to the sound management and husbandry of natural and agricultural resources" (for example, the preservation of trees and crops) must result "directly from the recreational activity" (for example, killing deer). It does not appear to support the view that the "contributions to the sound management and husbandry of natural and agricultural resources" (for example, improvement of the habitat of fish and wildlife at Camp McCoy by conservation experts) may result from the use of monetary fees paid by persons who engage in recreational activity (small game hunting, for example) which may or may not improve the habitat of wildlife.

The final factor militating against the construction for which the government contends lies in the relationship between the common law rules and § 29.68.

■ Under common law rules, entrants to land who were granted permission to enter for a consideration, for the purpose of conferring some other benefit upon the landowner, or in circumstances in which the landowner and entrant had a mutuality of interest were invitees. See Schlicht v. Thesing, 25 Wis.2d 436, 439–440, 130 N.W.2d 763 (1964); Hupfer v. National Distilling Co., 114 Wis. 279, 284, 90 N.W. 191 (1902). To such persons the landowner owed a duty of ordinary care, Szafranski v. Radetzky, 31 Wis.2d 119, 126, 141 N.W.2d 902 (1966); Schroeder v. Great Atlantic & Pacific Tea Co., 220 Wis. 642, 645, 265 N.W. 559 (1936). This relationship does not appear to be altered by § 29.68.

■■ Under the common law rules, those who entered upon the premises with the permission of the landowner, but in the absence of a mutuality of interest with the landowner, were licensees, Greenfield v. Miller, 173 Wis. 184, 188, 180 N.W. 834, 12 A.L.R. 982 (1921). To such persons, the landowner owed a duty to keep the premises safe from "traps" and to refrain from active negligence. Szafranski v. Radetzky, *supra*, 31 Wis.2d at 126, 141 N.W.2d 902; Greenfield v. Miller, *supra*, 173 Wis. at 188, 180 N.W. 834. This relationship is altered by § 29.68. Under the statute liability to licensees exists for "wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity." § 29.68 is, therefore, a statute in derogation of the common law and accordingly should be strictly construed.

I decline to extend the limitation imposed by the final sentence of subsection (3) on the term "valuable consideration" beyond that clearly contemplated by the legislature. I construe the final sentence of § 29.68(3) to exclude from the term "valuable consideration" only those "contributions to the sound management and husbandry of natural and agricultural resources of the state" which are produced by the recreational activity itself. I do not consider that the "contributions to the sound management and husbandry of natural and agricultural resources of the state" result from the recreational activity with sufficient directness in a situation in which participation in the recreational activity is conditioned upon payment of a monetary fee and the money is in turn used to finance the "contributions to sound management and husbandry of natural and agricultural resources of the state." I conclude that the payment of the permit fees by John S. Garfield and John W. Wiseman constituted the payment of "valuable consideration" within the meaning of § 29.68(3).

This conclusion does not dispose of the government's motion for summary judgment, however, since it appears that the plaintiffs do not all stand in the same relationship to § 29.68.

■ Plaintiff Betty M. Garfield sues for damages for physical injuries resulting from mental distress suffered as a result of the alleged negligence of the government. There are two possible theories of recovery for physical injuries resulting from mental distress caused by negligence: (1) recovery for physical injuries resulting from mental distress caused by plaintiff's fear for his own safety due to the negligence of another; and (2) recovery for physical injuries resulting from mental distress caused by injuries to or fear of peril or harm to another due to the negligence of a third person. It is not clear from the allegations of the complaint upon which theory plaintiff Betty M. Garfield relies. The complaint alleges "that as a result of the * * * explosion of the 90 mm blank cartridge [Betty M. Garfield] sustained a severe shocking of her nervous system. * * *" This allegation could be liberally construed to seek recovery under either of the above theories.

It appears that plaintiff Betty M. Garfield did not pay any fee in exchange for permission to enter the military reservation for the purpose of picnicking and hiking. As against Betty M. Garfield, therefore, the government would be protected by § 29.68 against liability for physical injuries to her directly caused by its negligence. *A fortiori* the govern-

ment is protected against liability for physical injury to her indirectly caused by its negligence; that is, as a result of an alleged chain by which the government's negligence caused her fear for her own safety and her fear caused the physical injury. Therefore, plaintiff Betty M. Garfield cannot recover for physical injuries to her resulting from mental distress caused by her fear for her own safety.

The second theory of recovery for mental distress could conceivably be viewed as a theory of derivative liability similar, for example, to an action by a wife for the loss of consortium of her husband due to physical injuries to him caused by the negligence of a third person. See Moran v. Quality Aluminum Casting Co., 34 Wis.2d 542, 150 N.W.2d 137 (1967). If the action were derivative in nature it would be derived from the liability of defendant to the person for whose safety plaintiff feared. In the present action this person is John S. Garfield. Since John S. Garfield was granted permission to enter upon the Camp McCoy Military Reservation for the purpose of hunting small game for a "valuable consideration", § 29.68 does not protect the government against liability for injuries suffered by John S. Garfield due to the negligence of the government. If the action of Betty M. Garfield for damages for physical injuries caused by mental distress is derived from John S. Garfield, it would appear that § 29.68 does not protect the government against liability for the negligent infliction of these injuries.

■ There appear to be at least two distinct categories of derivative liability. In the first category is the action which a plaintiff may institute to redress a wrong done to another. Examples of this type of derivative liability are the shareholders' derivative action and that part of a wrongful death action which seeks to recover for the decedent's pain and suffering. This type of derivative liability is clearly not involved here. A plaintiff who sues to recover for physical injuries caused by mental distress resulting from fear of harm to another sues not to redress a wrong done to the other, but to redress a wrong done to himself.

In the second category of derivative liability is the action which a plaintiff may institute to redress a wrong done to himself which is proximately caused by a wrong done to another. Examples of this type of derivative liability are an action to recover for the loss of consortium of one's spouse due to physical injuries to the spouse and that part of a wrongful death action which seeks to recover for the economic loss to the plaintiff caused by the death of the decedent. It is within this category of derivative liability which an action to recover for physical injuries caused by mental distress resulting from fear of harm to another may conceivably fall.

■ A person may recover for physical injuries resulting from mental distress caused by fear of harm to another even though there is no injury and, therefore, no liability on the part of the defendant, to the person for whose safety plaintiff feared. See Klassa v. Milwaukee Gas Light Co., 273 Wis. 176, 77 N.W.2d 397 (1956). In such a situation defendant's liability to plaintiff clearly does not derive from liability to the person for whose safety plaintiff feared.

It is conceivable, however, that in a case, such as the one at bar, in which the person for whose safety plaintiff feared does sustain injury, the liability to the plaintiff is derived from the liability to the person for whose safety plaintiff feared.

■ A plaintiff is not entitled to recover for physical injuries caused solely by shock or fright which results from distress over injuries to another, Waube v. Warrington, 216 Wis. 603, 258 N.W. 497, 98 A.L.R. 394 (1935), or from fear of harm to another, Klassa v. Milwaukee Gas Light Co., *supra*. In order to recover, a plaintiff must have been within the range of ordinary physical peril and must have feared for his own safety, Klassa v. Milwaukee Gas Light Co., *supra*, 273 Wis. at 186–187, 77 N.W.2d 397. It is not sufficient for recovery, there-

fore, that a plaintiff's spouse is injured by the negligence of a third person and that plaintiff thereby suffers injury resulting from mental distress. Plaintiff, in order to recover, must likewise have been threatened with injury. This requirement indicates that recovery for mental distress caused by fear for the safety of another is not derived solely from that other. It suggests that there must be a duty running from defendant to plaintiff apart from the defendant's actions toward the person for whose safety plaintiff feared. It suggests that plaintiff is able to recover in such a situation because when plaintiff is in a position to be threatened by defendant's actions, defendant owes plaintiff a duty of reasonable care.

Earlier cases viewed the problem as one of determining the duty of defendant to plaintiff. See Waube v. Warrington, *supra*. More recent cases, however, suggest that the "threat to plaintiff" element should not be expressed in terms of defendant's "duty" to plaintiff but simply as an assertion of public policy in placing some limits on defendant's potential liability and avoiding fraudulent claims. See Klassa v. Milwaukee Gas Light Co., *supra*, 273 Wis. at 184, 77 N.W.2d 397; Colla v. Mandella, 1 Wis.2d 594, 599, 85 N.W.2d 345, 64 A.L.R.2d 95 (1957); W. Prosser, Law of Torts (3d ed.) 352, 353–354, sec. 55.

The same public policy is responsible for other elements necessary to recovery for physical injury resulting from mental distress caused by fear of harm to another, for example, the requirement that the injury threatened or inflicted upon the other be a serious one, of such a nature as to cause severe shock to plaintiff; the requirement that the shock produce actual physical harm; and the requirement that the plaintiff be closely related to the person threatened or injured. See W. Prosser, *supra* at 352.

Although the cases have ceased to speak in terms of a duty running from defendant to plaintiff, the elements required for recovery indicate that the liability to plaintiff does not derive from the liability to the person for whose safety plaintiff feared. The elements necessary to recovery describe the relationship of plaintiff to the event caused by defendant's negligence. It is plaintiff's relationship to the event rather than the consequences of the event for the person for whose safety plaintiff feared that is relevant to plaintiff's right to recover.

I conclude, therefore, that the asserted cause of action of plaintiff Betty M. Garfield for physical injuries resulting from mental distress caused by the injuries to or fear of harm to John S. Garfield due to the negligence of the government is not derived from John S. Garfield and that such an action is, therefore, precluded by § 29.68.

The government's motion for summary judgment as against plaintiff Betty M. Garfield is hereby granted.

 Plaintiff John S. Garfield sues for damages for personal injuries to himself, for medical expenses incurred by him for treatment of Betty M. Garfield, and for the loss of the services, society and consortium of Betty M. Garfield.

John S. Garfield was granted permission to enter the Camp McCoy Military Reservation to hunt small game for a "valuable consideration" within the meaning of § 29.68(3). The statute, therefore, does not protect the government against liability to John S. Garfield for personal injuries to him caused by the negligence of the government.

The government's liability to John S. Garfield for medical expenses incurred in treatment of Betty M. Garfield, and for the loss of the services, society and consortium of Betty M. Garfield is dependent on the liability of the government to Betty M. Garfield for her injuries. As noted above, § 29.68 protects the government against liability to Betty M. Garfield for injuries caused by the negligence of the government. Plaintiff John S. Garfield, therefore, cannot recover for the medical expenses incurred in treatment of Betty M. Garfield or for the loss of the services, society and consortium of

Betty M. Garfield resulting from the negligence of the government.

The government's motion for summary judgment against plaintiff John S. Garfield insofar as he seeks to recover for medical expenses incurred in treatment of Betty M. Garfield and for the loss of the services, society and consortium of Betty M. Garfield is hereby granted. The government's motion for summary judgment as against plaintiff John S. Garfield insofar as he seeks to recover for personal injuries to him is hereby denied.

Plaintiff Audrey Wiseman sues for damages for personal injuries to herself. It appears that Audrey Wiseman did not pay any fee for permission to enter the Camp McCoy Military Reservation for the purpose of picnicking and hiking. The government is, therefore, protected by § 29.68 against liability for physical injuries to Audrey Wiseman caused by negligence.

The government's motion for summary judgment as against plaintiff Audrey Wiseman is hereby granted.

Plaintiff John W. Wiseman sues for medical expenses incurred by him for treatment of Audrey Wiseman and for the loss of the services, society and consortium of Audrey Wisemen.

The government's liability to John W. Wiseman for medical expenses incurred in treatment of Audrey Wiseman and for the loss of the services, society and consortium of Audrey Wiseman is dependent on the liability of the government to Audrey Wiseman. As noted above, § 29.68 protects the government against liability to Audrey Wiseman for injuries caused by negligence. Plaintiff John W. Wiseman, therefore, cannot recover for the medical expenses incurred in treatment of Audrey Wiseman or for the loss of the services, society and consortium of Audrey Wiseman.

The government's motion for summary judgment as against John W. Wiseman is hereby granted.

It is hereby adjudged that the actions of Betty M. Garfield, John W. Wiseman, and Audrey Wiseman and that part of the action of John S. Garfield which seeks to recover for medical expenses incurred by him in treatment of Betty M. Garfield and for the loss of the services, society and consortium of Betty M. Garfield are dismissed with prejudice.