**Edythe C. UROW, Administratrix of the Estate of Louis Urow, deceased, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 16851.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 21, 1962.

Decided Feb. 7, 1963.

Petition for Rehearing En Banc Denied En Banc April 16, 1963.

J. Skelly Wright, Circuit Judge, dissented.

Mr. Sheldon E. Bernstein, Washington, D. C., with whom Messrs. William A. Mann and Paul H. Mannes, Washington, D. C., were on the brief, for appellant.

Mr. Richard W. Barton, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before WASHINGTON, BURGER and WRIGHT, Circuit Judges.

PER CURIAM.

The District Court dismissed appellant's complaint which alleged that appellant's decedent was killed by a motor vehicle while crossing a street. The only negligence attributed to the District of Columbia was failure to provide a traffic control device at that intersection. The issue posed is thus not one of fact, but

one of law, i. e., whether the District's failure to establish a traffic control device may be raised by a private litigant in a tort action against the District. We hold that issue may not be so raised.

■ Congress has authorized the Commissioners of the District of Columbia to promulgate such rules and regulations regarding the designation of arterial and boulevard highways and to provide such traffic control devices as "are deemed advisable."[1] Pursuant to the legislative authority the Commissioners have designated certain intersections for the installation of traffic control signals and have provided the hours during the day and night such signals shall operate. The establishment of such a general traffic control plan is essentially legislative in character and is the result of the Commissioners' exercise of discretion and judgment. To argue that failure to exercise a discretionary authority is negligence serves only to underscore the legislative character of the authority. Whatever defects there may be in the doctrine of municipal immunity from tort liability, the doctrine is sound in this context.[2] The District of Columbia cannot be held liable when the alleged negligence involved would require a jury to examine the reasonableness of this sort of discretionary quasi-legislative determination made by the Commissioners[3] pursuant to authority vested in them by Congress.

In Johnston v. District of Columbia, 118 U.S. 19, at 20–21, 6 S.Ct. 923, at 924, 30 L.Ed. 75 (1886), the Supreme Court stated that "The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a *quasi* judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land. * * * *"

■ Appellant next contends that her complaint alleges a claim for relief within the exception to the general rule of municipal immunity with regard to the obligation to keep streets in a safe con-

---

1. § 40–603(f), D.C.Code Ann. (1961)— "The commissioners may establish and designate arterial and boulevard highways, regulate the speed of vehicles thereon, and provide for the equipment of any street, road, or highway, with control lights and/or other devices for the regulation of traffic, and make such other regulations with respect to the control of traffic as are deemed advisable.

2. Appellant makes a vigorous attack on the doctrine of sovereign immunity citing cases in which various state courts have judicially modified that ancient doctrine. But this jurisdiction, while having some attributes of the states, is governed by Congress and that body in adopting the Federal Tort Claims Act in 1947 consciously excluded the District from its provisions. We must also take notice that as recently as 1960 the District of Columbia Employee Non-Liability Act, 74 Stat. 519, was enacted making a limited modification of immunity as to the operation of vehicles owned or controlled by the District. While the courts of this jurisdiction no doubt have a certain flexibility in interpreting the existing exceptions to the doctrine, general abolition of the rule as it prevails here is not, in light of this background, something to be undertaken by the judiciary. See Wilson v. District of Columbia, 86 U.S.App. D.C. 28, 179 F.2d 44 (1949); Capital Transit Co. v. District of Columbia, 96 U.S.App.D.C. 199, 225 F.2d 38 (1955); Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 226 F.2d 266 (1955); cf. Scull v. District of Columbia, 102 U.S.App.D.C. 104, 250 F.2d 767 (1957); Wilson v. Bittinger, 104 U.S.App.D.C. 403, 262 F.2d 714 (1958). As we said in Wilson v. District of Columbia, supra, 86 U.S.App.D.C. at 31, 179 F.2d at 47, "Adequate reformation can be achieved only by legislation." (Quoting Smith, Municipal Tort Liability, 48 Mich.L.Rev. 41, 56).

3. This complaint does not present a claim that the municipality installed and then failed *to maintain* a traffic device at an intersection.

·dition after being put on notice of a defect. See, e. g., Booth v. District of Columbia, 100 U.S.App.D.C. 32, 241 F.2d 437 (1956) and cases cited therein. We cannot agree. The cases relied upon by appellant to support her "street safety" contention all involved physical defects, obstructions or failure to maintain proper lighting. The decision to repair a street after the city has been put on notice is a ministerial as distinguished from a discretionary function.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting).

The doctrine of sovereign immunity, as it relates to responsibility for torts, in the District of Columbia,[1] as elsewhere,[2] is a creature of the courts. It would seem, therefore, that the courts here, as they have elsewhere,[3] may undertake to relieve the District of this albatross.[4] In this case, however, as I see it, the issue is not presented. In the District of Columbia,[5] as elsewhere,[6] responsibility for street safety has always been recognized as an exception to the sovereign immunity doctrine. Here the allegation is that the street intersection was unsafe because of the absence of a traffic control device. Whether this absence stemmed from an exercise of informed judgment on the part of the District Government or resulted from negligence is a question of fact which, if controverted, is for the jury.[7]

1. Brown v. District of Columbia, 29 App. D.C. 273, 25 L.R.A.,N.S., 98 (1907).

2. For a collection of the cases, see 2 Harper & James, The Law of Torts, § 29.6 (1956); Prosser, Law of Torts, pp. 774–780 (1955).

3. Sovereign immunity has been judicially abolished in whole or in part in:
California—Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961), modified sub nom. Corning Hospital Dist. v. Superior Court of Tehama Co., 57 Cal.2d 488, 20 Cal. Rptr. 621, 370 P.2d 325 (1962);
Colorado—Colorado Racing Com'n v. Brush Racing Ass'n, 136 Colo. 279, 316 P.2d 582 (1957);
Florida—Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A.L.R.2d 1193 (1957);
Illinois—Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469 (1959);
Minnesota—Spanel v. Mounds View School District, Minn., 118 N.W.2d 795 (1962);
Michigan—Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961);
New Jersey—McAndrew v. Mularchuk, 33 N.J. 172, 162 A.2d 820 (1960);
Wisconsin—Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962).
But see Wilson v. Bittinger, 104 U.S. App.D.C. 403, 262 F.2d 714 (1958); Scull v. District of Columbia, 102 U.S. App.D.C. 104, 250 F.2d 767 (1957), cert. denied, 356 U.S. 920, 78 S.Ct. 703, 2 L. Ed.2d 715 (1958); Capital Transit Co. v. District of Columbia, 96 U.S.App.D.C. 199, 225 F.2d 38 (1955); Calomeris v.

District of Columbia, 96 U.S.App.D.C. 364, 226 F.2d 266 (1955); Wilson v. District of Columbia, 86 U.S.App.D.C. 28, 179 F.2d 44 (1949).

4. The doctrine of sovereign immunity has been the subject of a crescendo of criticism. See, e. g., Borchard, Governmental Responsibility in Tort, 36 Yale L.J. 1, 1100 (1927); Municipal Tort Liability in Operation, 54 Harv.L.Rev. 437, 461 (1941); Gellhorn & Schenck, Tort Actions Against the Federal Government, 47 Columbia L.Rev. 722 (1947).

5. District of Columbia v. Boswell, 6 App. D.C. 402 (1895). For a collection of subsequent cases, see Booth v. District of Columbia, 100 U.S.App.D.C. 32, 33, n. 4, 241 F.2d 437, 438, n. 4 (1956).

6. See 19 McQuillin, Municipal Corporations (3d Ed. 1950).

7. "* * * In selecting and adopting a general plan of public improvement, * * * the municipal corporation exercises judicial discretion, but in carrying out the plan it acts ministerially, and must perform the work in a reasonably safe and skilful manner. Acting in good faith, it, therefore, would not be liable for an error of judgment in constructing such a system.
* * * * *
"* * * Having adopted a plan and created an existing condition on the street in pursuance thereof, if it subsequently appears that the condition thus created renders the street unsafe, the District must go further and perform the duty cast upon it, growing out of its general supervision of the streets, to exercise ordinary care and take the neces-

sary additional steps to make the street, thus encumbered with the product of its plan, reasonably safe for travel." District of Columbia v. Caton, 48 App.D.C. 96, 104–105, 106 (1918).

See also Booth v. District of Columbia, supra Note 5; District of Columbia v. Berberich, 56 App.D.C. 12, 6 F.2d 710 (1925); Spanel v. Mounds View School District, supra Note 3; Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960), noted, 61 Columbia L. Rev. 115 (1961) and 46 Cornell L. Quarterly 366 (1961); Eastman v. State, 303 N.Y. 691, 103 N.E.2d 56 (1951), reversing 278 App.Div. 1, 102 N.Y.S.2d 925 (1951).