Robert E. HARBIN, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 18203.

United States Court of Appeals District of Columbia Circuit.

Argued April 21, 1964.

Decided July 3, 1964.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Martin E. Ger-el, Lee C. Ashcraft and William E. O'Neill, Jr., Washington, D. C., were on the brief, for appellant.

Mr. Richard W. Barton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Hubert B. Pair, Asst. Corporation Counsel, were on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge:

This appellant suffered injuries on July 14, 1962 when he was bitten by a police dog running at large. The dog admittedly belonged to the District of Columbia and was used by the Metropolitan Police in performance of police duties. In the District Court judgment was entered for the appellee upon its claim that the District of Columbia was then engaged in the performance of a governmental function. We do not acquiesce in the disposition of appellant's claim.

It is undisputed that on the evening of July 14, 1962, a Metropolitan Police sergeant assigned to the "Canine Corps" received a radio report that a housebreaking was in progress at 15th and K Streets, N. W. Upon arrival at that location officers were informed that the suspected housebreaker was running through an alley. The sergeant, according to his affidavit, saw the fugitive "who did not respond to my order to stop. Thereupon I released the police dog, Tara, to arrest the fugitive." We may not doubt that the police officer thought the dog might "arrest" the fugitive, but he did not do so.

Instead, the dog turned upon the appellant and bit him in the right arm and the lower part of the right leg. The appellant, an employee of a local newspaper, had been seated on a step outside his place of employment. The District's answer admitted he "was leisurely and properly sitting down and eating his lunch at the time." After the dog's attack upon the appellant, the sergeant's affidavit states, he "then recovered control of the dog. I requested Mr. Harbin remain where he was while I continued the chase * * *.[1] I immediately returned to the alley and transported Mr. Harbin to the Washington Hospital Center for treatment."

The appellant's complaint had alleged that the District was the owner of the police dog, Tara, "especially trained to attack certain human beings in and upon the public streets * * * and was, therefore, known or should have been known * * * to be of a vicious nature and disposition." The complaint may be read further to allege that the officer had negligently failed to control the dog which was not then on a leash or under any form of restraint. The dog when suddenly attacking the appellant had "responded to a command given by" the officer at a time when the appellant was lawfully seated and eating his lunch.

---

1. Other officers meanwhile arrested the culprit who was later convicted of housebreaking.

Thus according to the complaint, the District allegedly was liable for: "(1) failing to provide proper supervision of the dog; (2) failing to properly train the dog; (3) failing to otherwise take the necessary precautions for protection of the public against risk and harm generally to be reasonably anticipated."

. The appellee in its answer had admitted that it had trained the police dog, Tara, "for the purpose of detecting, preventing and arresting crime" and that the appellant had been bitten by that dog. It was urged in defense that the District's operation of the Metropolitan Police Department is a governmental function controlled by the doctrine of sovereign immunity.

The District points to our opinion in *Urow v. District of Columbia*,[2] where, citing many cases, we observed that general abolition of the rule of sovereign immunity is not to be undertaken by the Judiciary. Our footnote 2 observed that Congress in adopting the Federal Tort Claims Act in 1947 had consciously excluded the District from its provisions. Even as recently as 1960 the District of Columbia Employee Non-Liability Act[3] had provided only limited modification of the defense of immunity as to the operation of vehicles owned and controlled by the District. We do not doubt that the general rule still prevails.

■■ But there are other sections of the Code which seem not to have been considered. For example, D.C.Code, § 47–2005 (1961) provides that any person owning a dog "shall be liable in a civil action for any damage done by said dog to the full amount of the injury inflicted." Again, D.C.Code, § 1–902 (1961) authorizes the Commissioners to settle claims whether at law or in equity asserted against the District of Columbia. *whenever the cause of action*

"(a) Arises out of the negligence or wrongful act, either of commission or omission, of any officer or employee of the District of Columbia for whose negligence or acts the District of Columbia, *if a private individual*, would be liable prima facie to respond in damages, *irrespective of whether such negligence occurred or such acts were done in the performance of a municipal or a governmental function of said District * * *.* (Emphasis added.)

"(b) Arises out of the existence of facts and circumstances which place the claim * * * within the * * * principles of law * * *. [announced in our decided cases.]"

Clearly the Commissioners had ample authority to compromise this claim by an innocent citizen who was attacked by an unleashed, unmuzzled dog. Tara had been commanded to "arrest" a human being in an alley where the appellant concededly had a right to be, quietly seated, and eating his lunch. The dog had been released and was out of control.[4] The officer spoke of his actions after the biting when he "recovered control of the dog."

Obviously, a "private individual" could have been liable to the appellant both because of D.C.Code, § 47–2005, *supra*, and the rule at common law.[5] And the District stands in the shoes of that private individual as to compromises under section 902, *supra*, irrespective of the performance of a governmental function.

2. 114 U.S.App.D.C. 350, 351, 316 F.2d 351, 352, cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963).

3. D.C.Code, §§ 1–921 to 1–926 (1961), 74 Stat. 519. And see Capital Transit Company v. District of Columbia, 96 U.S.App. D.C. 199, 202, 225 F.2d 38, 41 (1955).

4. The sergeant's affidavit speaks of a complicating factor in that a police cruiser had overtaken the running dog and then swerved. Whatever its previous training, the dog then "turned in apparent confusion," and attacked the seated appellant.

5. In Scharfeld v. Richardson, 76 U.S.App. D.C. 378, 133 F.2d 340, 145 A.L.R. 980 (1942), we held that an owner might recover damages from the owner of another dog after the latter had attacked and destroyed the plaintiff's dog.

The record before us has made no reference to the foregoing sections of the Code.[6] The Corporation Counsel seems to have assumed that the District is immunized by the doctrine of sovereign immunity. Apparently on that account the Commissioners have been advised to deny liability. As we have intimated, that result is not compelled. In the first place, the District officials may accept liability and compromise the claim since the District, had it been a private individual, would have been liable prima facie to respond in damages. In the second place, the District Court without a hearing on the merits granted summary judgment, apparently on the supposition that the *general* rule of governmental immunity would here apply. Whatever limitation of liability could be said to flow from the application of the rule if a police officer in attempting to apprehend the fugitive had negligently discharged his service revolver to the appellant's injury, such is not this case.

Rather the District here was the proprietor of a dog. The appellant sought to prove that the animal was inherently dangerous to the public since it was unchecked, without direction and beyond control. No doubt, the District would contend that a trained police dog may be a valuable asset to the police in their endeavor to protect the public and to apprehend fugitives. The District for its own benefit had adopted means, purely private in nature, for the accomplishment of a particular result. There was a duty upon the District to control these means, a duty which finds "its source in special circumstances"[7] which the District itself created. As proprietor of the dog, the District had loosed a potentially danger-ous and vicious animal which might, and as alleged in this case did, inflict serious harm upon an innocent member of the public. Whether the District in such circumstances had taken reasonable precautions to prevent such injury presented a question which the appellant should have been permitted to develop.[8]

We are satisfied that summary judgment should not have been granted.

Reversed.

WASHINGTON, Circuit Judge, concurring: Whatever the liability of the District of Columbia for acts of its human agents, who are presumably subject to ultimate control by the President and the Congress, I think that the theory of sovereign immunity should not be applied to harms caused by non-human agencies that are inherently dangerous to life, limb and property when left unchecked and uncontrolled. The District must at least be liable, if not as an employer for the acts of an employee, as a proprietor and user, for the evil caused by an inherently dangerously instrumentality. While the sovereign immunity doctrine has little to commend it in any respect, the public ordinarily has at least the small comfort of knowing that human agents usually possess the will and the capacity to act reasonably and to conduct themselves accordingly. Police dogs, however, having little or no volition or ability to reason, present the continuous risk to the public of being unresponsive to the conditioning process, or responding, as here, in an unforeseen manner to an unforeseen stimulus. It is arguable that trained dogs are a considerable asset to the police force in protecting the public and apprehending fugitives. But they may turn out to be a nuisance and even a

---

6. Moreover we have not been shown that the Commissioners have issued any regulation governing the use by police officers of police dogs. See D.C.Code, § 1–224 (1961) which authorizes the Commissioners to promulgate regulations: "Seventh. To regulate the keeping and running at large of dogs * * *" and § 226 which additionally authorizes such regulations in aid of § 224 as the Commissioners deem necessary for the protection of lives and limbs of all persons in the District.

7. Best v. District of Columbia, 291 U.S. 411, 419, 54 S.Ct. 487, 78 L.Ed. 882 (1934).

8. *Ibid.*

terror to peaceable, law-abiding citizens. The community should bear the cost of injuries (or certainly the cost of insuring against injuries) it produces by using potentially dangerous and vicious animals to protect itself.