Clarence **THOMAS, Jr.**
and
**Willie Jean Thomas, Plaintiffs,**

v.

**Ralph R. JOHNSON, Precinct Station No. 11, Kenneth C. Weir, Precinct Station No. 11, Walter E. Washington, Mayor of the District of Columbia, John R. Layton, Chief of the Metropolitan Police Department of the District of Columbia and the District of Columbia, Defendants.**

**Civ. A. No. 1370–68.**

United States District Court
District of Columbia.

Dec. 12, 1968.

Hershel Shanks, Washington, D. C., for plaintiffs.

Charles T. Duncan, Corp. Counsel, John A. Earnest, and Vincent E. Ferretti, Jr., Asst. Corp. Counsels, Washington, D. C., for defendants Washington, Layton, and the District of Columbia.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

The complaint in this case alleges assault and battery, negligence and deprivation of civil rights. The original defendants were Johnson and Weir, two police officers of the Metropolitan Police Department in the District of Columbia; Walter Washington, Mayor of the District of Columbia; John R. Layton, Chief of the Metropolitan Police Department of the District of Columbia; and the District of Columbia itself. A motion to dismiss as to Defendants Washington and Layton was granted by this Court on September 12, 1968. The complaint asserts liability for personal injuries occurring as the result of an alleged assault and false arrest by two Metropolitan Police officers. It alleges that Defendant Johnson, an officer of the Metropolitan Police Department of the District of Columbia, inflicted on the male plaintiff serious injuries by hitting him on the head with his baton. The complaint alleges that the District of Columbia was negligent in its duties to train, instruct, supervise and control a police officer about whom it had received numerous complaints.

The motion before the Court is a Motion of Defendant District of Columbia to Dismiss the Complaint. In support of its motion, Defendant District of Columbia urges the position that in the maintenance of a police department, the District of Columbia is engaged in the performance of a governmental function, rather than a proprietary one, and, under the doctrine of sovereign or governmental immunity, it is not liable for negligence which may occur during the performance of that function. Plaintiff responds by citing two alleged exceptions to the doctrine of governmental immunity: (1) the ministerial actions exception, under which the test is not whether the sovereign is engaged in a governmental as opposed to a proprietary function, but whether the activity is discretionary, in which case immunity attaches, or ministerial, in which case there is no immunity from suit; and (2) the dangerous instrumentality exception, under which the sovereign is not immune from suit for the acts of a dangerous instrumentality which it looses upon the community.

Sovereign immunity began with the theory, allied with the divine right of kings, that "the King can do no wrong" and that it was a contradiction of his sovereignty to allow him to be sued as of right in his own courts. W. Prosser, The Law of Torts § 125, at 996–997 (3d ed. 1964). The doctrine was first extended

to a municipality in 1798 in Russell v. Men of Devon, 2 Term Rep. 667, 100 Eng.Rep. 359 (1798). That decision was predicated upon the absence of funds in the treasury of Devon to pay judgments arising out of tort claims, as well as the fear of a multitude of such suits. Greenstone, Liability of Police Officers for Misuse of Their Weapons, 16 Cleve.-Mar. L.Rev. 397, 398 (1967).[1] Today, the rule of municipal immunity from tort liability is generally considered to rest upon three grounds: (1) the immunity of the sovereign from suit, which is extended to the municipality as the representative of the sovereign; (2) the theory that it is more expedient that scattered individuals suffer than that the public in general, as represented by the government, be inconvenienced; and (3) the theory that governmental agents will perform their duties more effectively if not hampered by fear of tort liability. Annot., 60 A.L.R.2d 1198, 1199 (1958).

Without elaborating further on the history of governmental immunity,[2] suffice it to say that the doctrine has come under sharp criticism in recent years.[3] In summary, the critics have argued that, since the state is no longer totally immune from suit under the doctrine of "sovereign" immunity, "municipal" immunity from suit, a theory developed largely by analogy to the immunity of the sovereign state, should also be less than complete; that individual rights are entitled to protection even if the result is some public inconvenience; and that the "hampering" of negligent or tortious conduct by the government is to be desired rather than condemned. See Annot., supra 60 A.L.R. 2d at 1199. See also, e. g., Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 132 (Fla.1957). It has been said by one distinguished judge, Justice Roger Traynor of the California Supreme Court, that "the rule of governmental immunity for tort is an anachronism, without rational basis, and has existed only by the force of inertia." Muskopf v. Corning Hospital District, 55 Cal.2d 211, 216, 11 Cal.Rptr. 89, 92, 359 P.2d 457, 460 (1961).[4] Judge Traynor explains that the doctrine

> * * * began as the personal prerogative of the king, gained impetus from sixteenth century metaphysical concepts, may have been based on the misreading of an ancient maxim, and only rarely had the effect of completely denying compensation. How it became in the United States the basis for a rule that the federal and state governments did not have to answer for their torts has been called "one of the mysteries of legal evolution."—*Muskopf*, supra 55 Cal.2d at 214–215, 11 Cal.Rptr. at 90–91, 359 P.2d at 458–459.

Courts in the District of Columbia have voiced similar views about the anomalous role of sovereign immunity in today's world. Judge Holtzoff noted in one case that "[g]overnment immunity from suit is an obsolescent and dying doctrine." Calomeris v. District of Columbia, 125 F.Supp. 266, 267 (D.D.C. 1954). In affirming, the Court of Appeals said, "We agree with Judge Holt-

---

1. Mr. Greenstone's article, which will be cited again in the course of this opinion, is part of a Symposium on Police Tort Liability which was published in Volume 16 of the Cleveland-Marshall Law Review, 16 Cleve.-Mar.L.Rev. 397–455 (1967).

2. For a more complete discussion of the historical basis for the doctrine of sovereign and municipal immunity, see Muskopf v. Corning Hospital District, 55 Cal. 2d 211, 214–215 n. 1, 11 Cal.Rptr. 89, 90–91, 359 P.2d 457, 458–459 n. 1 (1961).

3. For a list of some of the more well-known critiques, see K. Davis, Administrative

Law Text § 25.01 at 451 nn. 1 & 2 (1959); W. Prosser, The Laws of Torts § 125 at 1004–05 nn. 78 & 80 (3d ed. 1964).

4. Other courts have made similar statements:
   "To continue to endow this type of organization [a municipality] with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism."—Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 133 (Fla.1957).

zoff that the defense of governmental function to a complaint for negligence, mistreatment or malpractice is 'an obsolescent and dying doctrine' * * *." Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 366, 226 F.2d 266, 268 (1955). Judge Sirica also noted with approval the trend toward abrogation of absolute sovereign immunity in Barr v. District of Columbia, 202 F.Supp. 260 (D.D.C.1962). But the limits of the extent of that abrogation were left for the Court of Appeals to detail in Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 337 F.2d 152 (1964), discussed herein in some detail.

■ To apply the District of Columbia rules pertaining to sovereign immunity and the extent of the abrogation thereof to the present situation, it is important to note at the outset that the termination of the doctrine of governmental immunity is for the legislature, not the judiciary. Urow v. District of Columbia, 114 U.S.App.D.C. 350, 316 F. 2d 351, cert. denied, 375 U.S. 826, 84 S. Ct. 69, 11 L.Ed.2d 59 (1963). While many state courts have taken the view that sovereign immunity is judicially created and thus can be judicially abolished, e. g., Muskopf v. Corning Hospital District, 55 Cal.2d 211, 218, 11 Cal.Rptr. 89, 93, 359 P.2d 457, 461 (1961); Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 134 (Fla.1957), the Court of Appeals for the District of Columbia has explicitly ruled to the contrary. *Urow,* supra, 114 U.S.App.D.C. at 351 n. 2, 316 F.2d at 352 n. 2. See Vanlandingham, Local Governmental Immunity Re-Examined, 61 Nw.U.L.Rev. 237, 255–61 (1966). The Court reasoned that since Congress, as recently as 1960, had made a limited modification of the immunity rule, the courts are powerless to declare a general abolition of it. *Urow,* supra at 351 n. 2, 316 F.2d at 352 n. 2. See also *Elgin,* supra, 119 U.S.App.D.C. at 117 n. 2, 337 F.2d at 153 n. 2; Harbin v. District of Columbia, 119 U.S.App.D.C. 31, 336 F.2d 950 (1964); Calomeris v. District of Columbia, 96 U.S.App.D.C. 364, 366, 226 F.2d 266, 268 (1955). However, the

Court of Appeals in *Urow* did make this concession to the role of the judiciary in expanding or contracting the doctrine of governmental immunity:

While the courts of this jurisdiction no doubt have a certain flexibility in interpreting the existing exceptions to the doctrine, general abolition of the rule as it prevails here is not, in light of this background, something to be undertaken by the judiciary.—*Urow,* supra, 114 U.S.App.D.C. at 351 n. 2, 316 F.2d at 352 n. 2.

Thus our inquiry must now focus on "the existing exceptions" to the doctrine of governmental immunity in the District of Columbia and whether the facts of the instant case fall within the rule or its exceptions. This examination is undertaken in light of the widely held view, which has been discussed previously and which this Court shares, that the doctrine of governmental immunity is an "obsolescent," "anachronistic" doctrine "without rational basis."

■ Dissatisfaction with the doctrine of municipal immunity from tort liability led to the partial breakdown of the doctrine and the now well-settled distinction between governmental and proprietary functions of a municipality. The theory is that while governmental immunity "cloaks the acts of the municipality done as the agent of the sovereign, there is no such immunity when the acts are done in a proprietary capacity." Annot., 60 A.L.R.2d 1198, 1203 (1958). Thus, whether a municipality is immune from suit turns on the nature of the function involved in the particular case.

It has been said that the underlying test of governmental as against proprietary function is whether the act performed is for the common good of all, or for the special benefit or profit of the corporate entity. Whether the activity in question is one traditionally performed by a municipality may be important * * *. It has been said that functions which could be as well performed by a private corporation, or which involve the sale of a commodity

or service, may properly be described as proprietary.—Annot., supra 60 A. L.R.2d at 1203–04. (Footnotes omitted.)

██ It is clearly established in the District of Columbia that the operation of a police force is a governmental, not a proprietary, function. Adams v. District of Columbia, 122 A.2d 765, 766–767 (D.C.Mun.App.1956); Savage v. District of Columbia, 52 A.2d 120, 121 (D.C.Mun. App.1947). Under this proprietary-governmental distinction, our Court of Appeals explicitly held that "torts committed by officers and employees of the District of Columbia, in the exercise of governmental functions such as the operation of a police force, cannot be made the basis of liability in a suit against the District." Capital Transit Company v. District of Columbia, 96 U.S.App.D.C. 199, 202, 225 F.2d 38, 41 (1955). However, the Court in Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 337 F. 2d 152 (1964), announced that the proprietary-governmental dichotomy of *Capital Transit,* supra, no longer constitutes the complete test in determining whether in a given case the District of Columbia is immune from suit. "A finding that a function is 'governmental' is the beginning of inquiry into the issue of answerability in tort, not the end of it." *Elgin,* supra 119 U.S.App.D.C. at 120, 337 F.2d at 156. There must be a further determination before immunity attaches, namely whether a governmental act is "discretionary" or "ministerial." If the act is "discretionary," the municipality is immune from suit; if "ministerial," there is no immunity. The Court of Appeals explained its revised view of the doctrine of municipal governmental immunity, as follows:

Almost from the very moment of creation by the courts of an immunity initially resting upon the ancient dogma that the king can do no wrong, the judges have been alert to insist that the king be acting as such at the time injury occurs. With kings replaced by city councils as the embodiments of the grace by which men permit themselves to be governed, this alertness was verbalized in somewhat different terms, but the core of the judicial insight remained the same. It is, we believe, essentially this: If a king, or a city council, is to do the job of governing well, then there is something to be said for withholding the threat of answerability in damages for at least some of the actions and decisions which governing necessarily entails. He who rules must make choices among competing courses of action and in the face of conflicting considerations of policy. The capacity and the incentive to govern effectively are arguably not enhanced by the prospect of being sued by those citizens who may be adversely affected by the choice eventually made. Thus it has been thought wise to sweep this restrictive cloud from the horizon and to let those responsible for the conduct of public affairs calculate their courses of action free of this intimidating influence. By the same token, in those areas of governmental action where the reason for the rule does not apply, the rule itself is disregarded.

This is, in our view, the origin and the present significance of the exception to municipal tort immunity rooted in the contrasting of "governmental" functions, as to which immunity is assumed to obtain, with those said to be of a "proprietary" nature, where it does not. It is not a useful exercise to catalogue the many cases in this and other jurisdictions where the distinction has purported to be drawn. They frequently defy logical classification, and they reflect varying, and often inconsistent, rationalizations, as might be expected in an area where there is a growing conviction that a strict rule of immunity from liability has outlived its time. We do think it significant that, in the traditional formularization of the opposed concepts as "governmental" and "proprietary," there has been an increasing tendency to substitute "ministerial" for "proprietary." This sounds upon

our ears as the knell of the old rationale, which was stated in terms of activities customarily associated with government as compared with those ordinarily carried on by the private sector of society. This was, at best, a tangential articulation of the most sensible support to be found for the immunity grant; and the use of the word "ministerial" both eliminates any continuing utility it might have and focuses attention upon a sharper and more satisfying analysis.

That analysis is more concerned with trying to distinguish between the functions performed within an area of readily recognizable governmental responsibility, than with undertaking to define precisely where the boundaries of that area lie. And, with such functions so identified and differentiated, it next inquires whether an injury inflicted as a consequence of one of such functions can be subjected to judicial redress without thereby jeopardizing the quality and efficiency of government itself. "Ministerial" connotes the execution of policy as distinct from its formulation. This in turn suggests differences in the degree of discretion and judgment involved in the particular governmental act. Where those elements are important, it is desirable that they operate freely and without the inhibiting influence of potential legal liability asserted with the advantage of hindsight. To the extent that the rule of municipal tort immunity continues to serve any useful purpose, this would appear to be that purpose; and its illumination in any given set of facts has been, and is, sought through the function-discriminating exception. —*Elgin*, supra 119 U.S.App.D.C. at 118–119, 337 F.2d at 154–155.

See also Urow v. District of Columbia, supra, 114 U.S.App.D.C. at 352, 316 F.2d at 353.

■■ Since the operation of a police force is clearly a governmental function, *Adams*, supra; *Savage*, supra, the question under *Elgin*, supra, becomes whether the operation of the force, including training, instruction, supervision and control of police officers, is a discretionary or a ministerial function of a municipal government. If discretionary, tort liability will not attach and the complaint must be dismissed as to the District of Columbia; if ministerial, the District is not immune from suit. An act is ministerial if it "connotes the execution of policy as distinct from its formulation." *Elgin*, supra, 119 U.S. App.D.C. at 119, 337 F.2d at 154–155. It is discretionary if it involves the exercise of judgment and the formulation of policy, that is, the "power and duty to make a choice among valid alternatives." Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 218 (1963). It has been said that "[t]he dichotomy between 'ministerial' and 'discretionary' is at least unclear, and one may suspect that it is a way of stating rather than arriving at the result." *Jaffe*, supra at 218. Nevertheless, in the absence of legislative abolition of the doctrine of sovereign immunity, this is the distinction to be applied in the District of Columbia, *Elgin*, supra. And it is a far more logical distinction than the simple categorization of functions as either governmental or proprietary, which, as has been noted, is only "the beginning of inquiry into the issue of answerability in tort." *Elgin*, supra 119 U.S.App.D.C. at 120, 337 F.2d at 156.

■ One judge of our Court of Appeals has said that "the appointment of police officers requires the exercise of discretion." Tucker v. Duke, 107 U.S. App.D.C. 253, 254, 276 F.2d 499, 500 (1960) (Bazelon, J., concurring). However, there is no clear statement in this jurisdiction about whether training, supervision, control and instruction are also discretionary or whether they are merely ministerial acts of the municipality. Yet, from the cases in other jurisdictions which have dealt with this and related problems, the principle emerges that the tasks of supervising and instructing officers are ministerial,

not discretionary, acts.[5] From the very nature of these activities, it is clear that they do not involve the kind of policy-formulating, judgment-making processes encompassed by the term "discretionary." Once the decisions have been made to have a police department, to organize it in a particular way, and to hire a specific individual to be a member of that department, the acts of training, instructing, supervising and controlling the individual officer are merely "ministerial." When the negligence of the municipality in the performance of these ministerial functions, then, is the proximate cause of injury to a citizen, the municipality is not immune from suit and will be held liable in tort. See Greenstone, Liability of Police Officers for Misuse of Their Weapons, 16 Cleve.-Mar.L.Rev. 397, 408–09 (1967).

In the instant case, it is alleged that there was such negligence which was the proximate cause of injury to Plaintiffs. The facts which are alleged are that Defendant Johnson drank on duty, used racial epithets and toyed with his baton in congested areas, actions which were repeatedly brought to the attention of Defendant District of Columbia. It is alleged that Plaintiff's injuries were the "proximate result" of Defendant District of Columbia's negligent failure to respond to these complaints. The allegation that the District received such complaints about Defendant Johnson indicates that the District of Columbia had been put on notice of its laxity in the performance of functions which we have already found to be ministerial, supervising and controlling an officer, and had the opportunity to cure this alleged laxity. In this connection, one commentator has noted:

> The municipal employer will generally be held liable where it has retained an agent whose past history did in fact, or should have, put the municipality on notice of the agent's propensity for violence or instability. The initial consideration in this area is imposed by the concept of *proximate cause*. It must be affirmatively shown that the negligence of the municipality in failing to guard against potential hazard to members of the public by not selecting proper or competent officers must have proximately contributed to the injury complained of * * *. [I]f negligence in the selection of unfit persons or *retention of known incompetents* can be shown on the part of members of the appointing authority, recovery of damages against the municipality will follow subject to the proximate cause limitation * * *. (Emphasis added.)——Greenstone, Liability of Police Officers for Misuse of Their Weapons, 16 Cleve.-Mar.L.Rev. 397, 408–09 (1967).[6]

5. See, e. g., Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla.1957). Cf. Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12 (1943). See also Note 6 and accompanying text, infra.

6. The Greenstone article then proceeds to say that "the task of supervising underlings is considered discretionary under *Muskopf-Hargrove* formulation." Greenstone, supra at 409. However, in the context in which this statement is made and with a knowledge of the two cases cited, one can only conclude that the use of the word "discretionary" was a misprint or typographical error. It is clear that the author intended to use the word "ministerial". See also Greenstone, supra at 399 n. 13.

The view that the author intended to use the word "ministerial" instead of "discretionary" in the sentence quoted above was confirmed in a letter from Mr. Greenstone to my law clerk. In reply to an inquiry, Mr. Greenstone wrote:
"Upon re-reading my article on the *Muskopf-Hargrove* case, it is apparent that the word 'discretionary' was a typographical error.
"The quote should read, 'The task of supervising underlings is considered ministerial under the *Muskopf-Hargrove* formulation.' "
See letter from Herbert E. Greenstone, October 25, 1968, on file in the Office of the Clerk of the United States District Court for the District of Columbia (Civil Action 1370–68).

Greenstone then cites Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12 (1943), where it was said:

> But if it were known, as averred here, that there were persons who actually possessed and indulged such propensities, the deliberate toleration of such persons on a police force by those having such knowledge and the power and duty to remove them appears to be without legal justification. * * *

> * * * The law giving to a superior officer the power to suspend or remove subordinates would be little more than a contribution to the ego of the superior if it did not likewise place on him the correlative duty of vigilantly exercising that power in the protection of the public interest.—*Fernelius,* supra at 240–241, 138 P.2d at 21.[7]

■■ Nor is the District of Columbia necessarily immune from suit as principal for the intentional torts of its agent police officers, so long as the applicable "scope of employment" rules can be proved at trial to apply to the facts of the instant case. Cf. Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 133 (Fla.1957). Those jurisdictions which have considered this aspect of the problem have held that the action of a police officer in making an assault upon a citizen is not a discretionary act, but is merely ministerial. Robinson v. Smith, 211 Cal.App.2d 473, 27 Cal.Rptr. 536, 541 (1962). Cf. Sherbutte v. Marine City, 374 Mich. 48, 54–55, 130 N.W.2d 920, 923 (1964). We believe this is a sound determination. Similarly, we believe that when our Court of Appeals adopted the discretionary-ministerial distinction in the area of sovereign immunity, it did not intend that the distinction be limited to cases of negligent

torts, or it would have made an explicit holding to that effect. See Simpson v. City of Miami, 155 So.2d 829 (Fla.Dist. Ct.App.1963). The discretionary-ministerial distinction applies to cases of intentional, as well as negligent torts.

■ Precedent, reason and the realities of life on the streets of our cities lead to the conclusion that a municipality should be held liable for the torts of its police officers where they act as they are alleged to have acted in the instant case. "It is, after all, the state which puts the officer in a position to employ force and which benefits from its use." Jaffe, supra at 229. When the officer misuses that force, and particularly when the government is on notice that he is likely to misuse it, the municipality should not be allowed to retreat behind the cloak of immunity while innocent persons find themselves the victims of police mistreatment. Indeed, the fact that a municipality knows it will be liable in such cases may itself be a valuable deterrent, for "police tactics are often institutional and awards against the state may modify institutional practices." Jaffe, supra at 230. However, recognizing that the activities alleged in the instant case are the exception and not the rule in the operation of the Metropolitan Police Force, the caveat of the Michigan Supreme Court in a similar situation seems pertinent here:

> Though actions against municipalities may now be maintained on the basis of the tortious acts of its police officers, this is not to say that every malefactor, or recalcitrant arrestee, may only be apprehended and confined pursuant to an engraved invitation complete with R.S.V.P. Police officers still may and must exert the reasonable force necessary to perform

---

7. Although the authorities cited in this paragraph speak about the municipality being put on notice of an officer's dangerous propensities, we do not consider whether the actions alleged in the instant case are within the so-called "dangerous instrumentality" exception to the doctrine of sovereign immunity, which Plaintiff contends

finds support in the *Harbin* and *Barr* cases, infra note 8. Rather, these authorities are mentioned only to demonstrate the relationship of the alleged notice to the alleged negligence of the District of Columbia in the performance of its ministerial functions.

their important duty to society.— *Sherbutte,* supra, 374 Mich. at 55–56, 130 N.W.2d at 924.

Since the motion before this Court is a motion to dismiss, we do not reach the ultimate question of liability on the part of the District of Columbia. We hold only that the District is not shielded from suit in this case by the doctrine of governmental immunity. It may be sued for its alleged negligence in the performance of its own ministerial acts of training, controlling, supervising and instructing its police officers. It may also be sued on a theory of respondeat superior for the ministerial acts of its employee officers in allegedly assaulting Plaintiff. Having reached these conclusions, it is unnecessary to consider Plaintiffs' other argument, the dangerous instrumentality exception to the doctrine of sovereign immunity.[8] The Motion of Defendant District of Columbia to Dismiss the Complaint is denied.

---

8. Since we do not reach the question of the dangerous instrumentality exception to the doctrine of governmental immunity, it is unnecessary to consider whether the rules announced by the Court of Appeals in Harbin v. District of Columbia, 119 U.S.App.D.C. 31, 336 F.2d 950 (1964), and by Judge Sirica of the District Court in Barr v. District of Columbia, 202 F.Supp. 260 (D.D.C.1962), both involving attacks by police dogs with dangerous propensities, apply to the facts of the instant case.