Dale Allan DODGE and Diane Dodge,
Plaintiffs-Appellants,

v.

Ronald STINE, et al.,
Defendants-Appellees.

FIREMANS FUND INSURANCE COMPANY and Landy Packing Company,
Plaintiffs-Appellants,

v.

JEFFERSON COUNTY, et al.,
Defendants-Appellees.

Nos. 83–1958, 83–2345.

United States Court of Appeals,
Seventh Circuit.

July 31, 1984.

Peter V. Taylor, Doar, Drill & Skow, New Richmond, Wis., for plaintiffs-appellants.

Dennis E. Robertson, McCusker & Robertson, Madison, Wis., James D. Wickhem, Wickhem, Buell, Meier, Wickhem & Southworth, Jamesville, Wis., for defendants-appellees.

Before PELL and COFFEY, Circuit Judges, and NICHOLS, Senior Circuit Judge.*

PELL, Circuit Judge.

This appeal stems from a seemingly innocuous encounter between two police officers and a juvenile that produced a high speed chase involving 20 squad cars culminating in a collision between plaintiffs' vehicle and the vehicle driven by the juvenile. Plaintiffs brought this diversity suit against the juvenile, Ronald Stine, the officers involved in the chase, and the counties that employed the officers. A jury found Stine negligent, but exonerated the officers and their respective counties. Plaintiffs appeal the verdict and challenge the district court's decision to exclude two of plaintiffs' theories of liability.

I Facts

At approximately 10:30 p.m., August 22, 1978, Officers Younk and Vincent of the village of North Prairie, Wisconsin, Police Department were going off duty. Officer Vincent left the squad car to get his personal vehicle, while Officer Younk drove the squad car to the garage of the police station. As Younk filled the squad car with gas he noticed Stine walking by the police station. Younk thought that Stine might be violating the local 10:00 p.m. curfew, which applied to anyone under 18 years, and began to question him. Stine identified himself and produced his wallet

and driver's license. Stine told Younk his address, which also appeared on his license, and disclosed his father's name.

During Younk's questioning of Stine, Vincent pulled his personal car into the parking lot of the police station. At Younk's motion Vincent left his car and joined Younk. Vincent did not remove the keys from his car's ignition, nor did he lock his car. At some point during the questioning Younk frisked Stine and found that he had no weapons. Stine, who appeared to be under the influence of drugs, became belligerent and refused to reveal his mother's name. Younk and Vincent threatened to arrest Stine for the curfew violation and disorderly conduct.

Stine suddenly ran away from the officers and headed for some box cars near the station. Vincent chased Stine on foot, while Younk drove the squad car toward the area where he thought Stine might be. Stine doubled back to the station and stole Vincent's car. Younk and Vincent saw Stine driving away at a high speed and pursued him in the squad car. Stine was driving at speeds in excess of 95 m.p.h. and ran four stop signs. Stine periodically turned off his lights and weaved from lane to lane on the two lane road. At some point during the chase Younk and Vincent received information confirming that Stine had a valid driver's license and was not subject to any outstanding warrants. The officers told the dispatcher at the Waukesha County Sheriff's Department that they were pursuing Stine and related that Stine's bizarre behavior had been sparked by the threat of a disorderly conduct charge. The officer in charge of communications with the various squad cars later involved in the chase, however, did not know that Stine was a juvenile whose address was known or the origins of the chase. He did know that Stine was driving in a dangerous and irrational manner.

Younk and Vincent gave up the chase after ten miles when their squad car broke down. By the time Younk and Vincent

* Philip Nichols, Jr., Senior Circuit Judge for the Federal Circuit, is sitting by designation.

were forced to abandon the chase, squad cars from Waukesha County were following Stine. Stine entered an interstate highway by using the exit ramp as an entrance ramp. He drove west in the eastbound lanes of the highway, followed by Waukesha County squad cars and squad cars from neighboring towns. Ultimately 18 or 20 squad cars joined in the pursuit of Stine. Stine shifted into the proper lane and continued driving at speeds between 100 and 110 m.p.h. Stine evaded at least one road block by driving on the shoulder of the road.

After several attempts, officers in one of the squad cars shot and exploded one of Stine's tires. Stine continued to drive, swerved across the median, and collided with Dale Dodge's semi-truck. The collision injured Dodge and damaged the truck. Plaintiffs filed this diversity suit, alleging negligence on the part of Stine and all of the law enforcement officers involved in the chase. Plaintiffs argued that the police should have abandoned the chase in favor of apprehending Stine at a later time, and that the chase caused Stine to drive recklessly and collide with Dodge. The jury found Stine solely responsible for the accident. On appeal, plaintiffs complain that the court erred in preventing them from arguing that Vincent was negligent in leaving his keys in his unlocked car when he chased Stine, and that the various police departments were negligent in not formulating written guidelines governing high speed chases and the use of firearms. Plaintiffs also complain that the jury's verdict is against the weight of the evidence.

II Liability for Negligent Placement of Car Keys

One of plaintiffs' theories was that Officer Vincent, by leaving the keys in his unlocked car, negligently allowed Stine to steal the car, which foreseeably led to the accident. In a pre-trial ruling the district court held that Wisconsin law, which governs this action, does not permit the imposition of liability upon a car owner who negligently allows his car to be stolen by a thief who later causes an accident. Plaintiffs

urge us to follow decisions from states other than Wisconsin and impose liability. A review of Wisconsin case law will demonstrate the fallacy in plaintiffs' argument.

In *Meihost v. Meihost*, 29 Wis.2d 537, 139 N.W.2d 116 (1966), the Wisconsin Supreme Court considered a case in which the owner of a car left a set of keys in the glove compartment of his unlocked car. Someone stole the car and later caused an accident. The court initially found that the car owner had not been negligent in leaving the keys in the glove compartment, but went on to state:

> Assuming that the key had been left in the ignition it may be that such conduct would be negligence on the part of the owner but, even so, public policy considerations direct that, under most circumstances, the owner not be held liable for such harm as would result by reason of the injury of persons in a collision caused by the negligent driving of the thief of the car. Under most circumstances, allowance of recovery would place too unreasonable a burden upon the owners (or others having legal custody) of motor vehicles. In this respect, we agree with the conclusion reached by the supreme court of California in *Richards v. Stanley*, (43 Cal.2d 60, 271 P.2d 23 (1954)) in which it held, under facts similar to those here assumed, that it would be incongruous to hold the car owner responsible for the negligence of the driver where the car was taken without permission while ordinarily exonerating him for similar acts where he actually loaned his vehicle to the one driving.

*Id.* at 546–47, 139 N.W.2d at 121. Despite the citation to *Richards*, it is clear that the Wisconsin Supreme Court did not intend to adopt the California approach. In *Richards* the court held that absent notice that the car will be stolen by one incompetent to drive it, the owner of a car is not negligent in facilitating a theft by leaving the keys in the car. The court did note that facilitating a theft by an intoxicated driver might lead to liability. 271 P.2d at 23.

The situation involving theft by a drunk driver envisioned in *Richards* was presented in *Duarte v. City of San Jose*, 100 Cal.App.3d 648, 161 Cal.Rptr. 140 (Cal.Ct. App.1980). In *Duarte* police officers arrested a drunk driver and left him unattended in a squad car with the key in the ignition. The drunk stole the car and subsequently injured plaintiff in an accident. The court found that "[t]he reasonable likelihood that an arrested drunk might, in his inebriated state of mind, try to flee is precisely the hazard that makes giving him easy access to a vehicle negligent." *Id.* at 659, 161 Cal.Rptr. at 145–48.

*Duarte* makes clear that the concern in California is with basing a finding of negligence on the mere failure to remove keys from a car's ignition. When the likelihood of theft by one incompetent to drive is high, the courts will not hesitate to find negligence. *Richards* and *Duarte*, in this respect, are radically different from *Meihost*, in which the court was willing to assume negligence, but nevertheless unwilling to impose liability for reasons of public policy. The courts in Wisconsin recognize that, in a limited number of cases, liability should not be imposed for harm caused by a negligent defendant. This public policy exception is applied: "in cases so extreme that it would shock the conscience of society to impose liability." *Colla v. Mandella*, 1 Wis.2d 594, 598, 85 N.W.2d 345, 348 (1957); *see also Schilling v. Stockel*, 26 Wis.2d 525, 133 N.W.2d 335 (1965). Through this public policy exception the courts protect defendants from liability out of proportion to their negligence.[1]

A recent case from the Wisconsin Supreme Court confirms the difference between the approach taken by Wisconsin and that taken by California. In *Lichter v. Fritsch*, 77 Wis.2d 178, 252 N.W.2d 360 (1977), defendant left the keys in his unlocked car after parking on the grounds of a veteran's hospital for the treatment of the mentally ill. One of the patients stole the car and caused an accident. The court rejected the argument that the case could be distinguished from *Meihost* on the basis of the increased probability of theft by one incompetent to drive a car. The court was willing to accept that defendant had been negligent, but still refused to impose liability for reasons of public policy.

On two, separate occasions two different district court judges read *Lichter* as precluding a cause of action based upon negligent failure to remove keys from a car. This analysis of Wisconsin law by district judges sitting in Wisconsin is entitled to great weight, and we will accept it unless clearly wrong. *C.R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852 (9th Cir.1977); *Harris v. Hercules, Inc.*, 455 F.2d 267, 269 (8th Cir.1972); *Sta-Rite Industries, Inc. v. Johnson*, 453 F.2d 1192 (10th Cir.1972), *cert. denied*, 406 U.S. 958, 92 S.Ct. 2062, 32 L.Ed.2d 344. Our own reading of the cases convinces us that there is ample support for the district court's decision. Wisconsin simply does not impose liability despite defendant's negligence in allowing a thief to steal his car, even when the thief is a mental patient not competent to operate a car. We cannot accept plaintiffs' claim that *Duarte* is persuasive precedent for finding defendant liable. *Duarte* involved a finding of negligence, which is not enough to support liability under Wisconsin law.[2] Plaintiffs have provided us with no

---

**1.** Plaintiffs argue that, *Meihost* notwithstanding, the public policy issue should not have been decided until the jury was allowed to consider all the facts. Application of the public policy exception is a question of law, and although development of the facts may be necessary in some cases before that determination can be made, *Enright v. Board of School Directors*, 114 Wis.2d 124, 338 N.W.2d 114 (Wis.Ct.App.1983), such is not the case when the Wisconsin Supreme Court has already made the determination for a class of cases.

**2.** Although we need not decide the question, we note that *Duarte* is not persuasive even as to finding Vincent negligent. Plaintiffs admit that Vincent had no reason to suspect Stine of any wrongdoing until Stine ran away, and therefore could not have had any reason to expect that Stine would steal his car. Plaintiffs nonetheless argue that, when Stine began to run away from the station, Vincent should have realized that Stine would double back to steal the car and that Vincent, instead of chasing Stine, should have returned to his car and removed the keys.

reason for ignoring Wisconsin's expressed public policy, and we can see no basis for distinguishing this case from *Lichter*. Accordingly, the dismissal of this portion of plaintiffs' complaint is affirmed.

III Failure to Formulate Written Standards

■ Plaintiffs sought to introduce evidence that none of the police departments involved in the chase had formulated written guidelines governing the conduct of officers involved in a high speed chase or the use of firearms. The district court excluded this evidence on the ground that formulation of policy is a discretionary act that cannot form the basis for a governmental unit's liability. The court did not exclude evidence concerning the supervision and training of the various officers.

An initial obstacle faced by plaintiffs is the jury's finding that none of the officers was in any way negligent. We find it difficult to understand how a rational jury could find a police department negligent in failing to have written guidelines governing the proper method of conducting a high speed chase, and further find that the absence of the guidelines was a proximate cause of plaintiffs' injuries, and yet find that the chase was not conducted negligently. The absence of guidelines could only cause an injury if the officers acted negligently because of the lack of written policy. Plaintiffs' claim that the jury may have viewed the police as unsupervised children and forgiven them their folly is less than convincing.

Despite the absence of any apparent prejudice, we will examine the merits of plaintiffs' claim. Plaintiffs acknowledge that a governmental body cannot be held liable for a discretionary act, but argue that the failure to promulgate written guidelines—presumably guidelines that would have altered the officers' conduct in this case—was a ministerial act not covered by immunity. In support of this proposition plaintiffs muster but one decision,

*Thomas v. Johnson*, 295 F.Supp. 1025 (D.D.C.1968).

Before examining *Thomas*, it would be best to set forth the standards governing governmental immunity in Wisconsin. Under Wis.Stat. § 893.80(4): "No suit may be brought against any ... political corporation, governmental subdivision or any agency thereof ... for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." The Wisconsin Supreme Court had held that "the terms 'quasi-judicial and quasi-legislative' and 'discretionary' are synonymous." *Lifer v. Raymond*, 80 Wis.2d 503, 512, 259 N.W.2d 537, 541–42 (1977). Section 893.80(4), in essence, follows the traditional distinction between discretionary and ministerial acts in applying immunity.

A number of Wisconsin cases have considered claims analogous to plaintiffs'. The standard applied in determining when an act is ministerial is that:

A public officer's duty is ministerial only when it is absolute, certain, and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

*Lister v. Board of Regents*, 72 Wis.2d 282, 301, 240 N.W.2d 610, 622 (1976). When this standard is applied, plaintiffs' claim that the decision whether to formulate written policies is a ministerial act appears patently absurd. The decision whether to formulate policy on a given area, and what the form and content of that policy will be, is the quintessential discretionary governmental act. Policy decisions concerning whether to erect signs, *Dusek v. Pierce County*, 42 Wis.2d 498, 167 N.W.2d 246 (1969), whether to open a highway, *Pavlik v. Kinsey*, 81 Wis.2d 42, 259 N.W.2d 709 (1977), or whether to issue a driver's license, *Lifer v. Raymond*, 80 Wis.2d 503, 259 N.W.2d 537 (1977), are all discretionary

We do not find this a compelling portrait of what a reasonable person in Vincent's position would have done as Stine ran *away from* the car

he would later steal. This situation is a far cry from leaving a drunk unattended in a squad car with the key in the ignition.

acts. Clearly the decision whether to formulate written policy is discretionary. More important, even assuming that putting policy in writing is ministerial, plaintiffs' claim presupposes that the policy would have adopted their position regarding termination of the chase, yet the decision as to what policy to follow is undeniably discretionary. Plaintiffs' claim that the failure to formulate policy is never discretionary is equally baseless. *Allstate Insurance Co. v. Metropolitan Sewerage Commission*, 80 Wis.2d 10, 258 N.W.2d 148 (1977) (it is "self-evident" that failure to enact rules and regulations requiring safe and proper operation of sewage system is discretionary); *see also Dusek*, 42 Wis.2d 498, 167 N.W.2d 246 (1969) (county's failure to exercise legislative function is discretionary).

Our conclusion is not altered by *Thomas v. Johnson*, 295 F.Supp. 1025 (D.D.C.1968), a decision based on the common law of the District of Columbia and having no precedential value in Wisconsin, in which suit was brought against the District of Columbia for failure to supervise a police officer who assaulted plaintiff, and about whom the District had received many complaints. The court recognized that an act is discretionary "if it involves the exercise of judgment and the formulation of policy." *Id.* at 1030. The court, nonetheless, held that "[o]nce the decisions have been made to have a police department, to organize it in a particular way, and to hire a specific individual, ... the acts of training, instructing, supervising and controlling the individual officer are merely 'ministerial.'" *Id.* at 1031. The court did not explain how it reached this conclusion, and we cannot subscribe to this overly broad statement. Clearly, the decision as to the type of training, the content of instruction, and the form of supervision are discretionary decisions. Once these decisions are made, the negligent failure to supervise a particular officer may be "ministerial," but the decision that supervision shall take a particular form is not. Similarly, the decision on what policy to follow in conducting high speed chases, and whether to put that policy in writing, is discretionary and not subject to judicial review.

## IV Sufficiency of the Evidence

We need only briefly review plaintiffs' claim that there was no credible evidence to support the jury's verdict. The essence of plaintiffs' case against the various officers was that the chase caused Stine to drive recklessly and should have been halted. Plaintiffs point out that the police had Stine's name and address and could have apprehended him later. Plaintiffs produced an expert, whose qualifications were too lengthy to set forth in their brief, who testified that everything defendants did was negligent. Plaintiffs now claim that there was no credible evidence to contradict their expert, and no evidence to support the verdict.

▉ We note, in evaluating plaintiffs' claim that the jury was bound to follow the opinion of their expert, that opinion evidence is not binding on the fact-finder even if no contradictory evidence is offered by the other side. The fact-finder, here the jury, should only give it weight in inverse ratio to the amount of speculation and unfounded assumption it perceives to form a part of it. *United States v. Northern Paiute Nation*, 393 F.2d 786, 802, 183 Ct.Cl. 321 (1968). The opinion of plaintiffs' expert contained much the jury could have perceived as speculation and unfounded assumption.

▉ Plaintiffs' argument rests on the claim that defendants' evidence was self-contradictory; defendants agreed that a chase that endangers the public should be halted, but insisted that the pursuit of Stine was justified. Plaintiffs have mischaracterized the evidence in an attempt to win a new trial. Defendants testified, and plaintiffs' expert agreed, that in some situations a driver will continue to endanger the public regardless of pursuit, and that such a driver should be pursued and stopped. There was evidence that Stine was intoxicated, drove dangerously before he was chased, drove in an irrational and reckless manner during the chase, and con-

tinued to drive after the police shot out one of his tires. The police could reasonably regard Stine as the type of driver who must be stopped. This was a case in which the driver, rather than the chase, posed a serious threat to the public. The jury's verdict exonerating the police and fixing the blame on Stine was amply supported by the evidence.

For the reasons stated in this opinion, judgment for defendants is AFFIRMED.